Cheryl McGRATH, et al., Plaintiffs,

v.

DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT, et al.,
Defendants.

Civ. A. 88–1792–MA.

United States District Court,
D. Massachusetts.

Oct. 11, 1989.

fendant would encounter in establishing the ex-    istence and effect of a relevant permit.

William Katramados, pro-se, Boston, Mass.

Regina L. Quinlan, Boston, Mass., for other plaintiffs.

Anthony J. Ciccone, Trial Atty., HUD Office of Litigation, Washington, D.C., Judith Yogman, Asst. U.S. Atty., Rod Solomon, Gen. Counsel, Susan E. Ireland, Atty., Boston Housing Authority, and Albert W. Wallis, First Asst. Corp. Counsel, Boston Law Dept., Boston, Mass., for HUD.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This case originated with a *pro se* complaint filed by eleven applicants for Boston public housing and one Boston City Councillor. Plaintiffs challenged a June 14, 1988 Voluntary Compliance Agreement ("VCA") entered into by the federal defendant, the Department of Housing and Urban Development ("HUD"), and the city defendant, the Boston Housing Authority ("BHA"). The complaint alleged that the VCA embodies segregative policies which both compact minorities into BHA public housing and delay access by non-minorities into housing developments of their choice. The plaintiffs named the Massachusetts Executive Office of Communities and Development ("EOCD") as state defendants for their failure to monitor the BHA and prevent the implementation of the compliance agreement.

The plaintiffs initially requested an expedited hearing on a motion for preliminary injunction, alleging that VCA provisions foster racial compacting within Boston. They defined racial compacting as the practice of confining disadvantaged minority residents within racially designated Boston localities.

The federal defendants immediately suggested this case be combined with an earlier filed related claim, *N.A.A.C.P., et al. v. Boston Housing Authority, et al.,* Civil Action No. 88–1155–T, since both suits focused upon HUD's Title VI enforcement efforts against the BHA for past racial discrimination and the effect of the VCA on current and former applicants for public housing. The plaintiffs opposed such case consolidation.

Motions to dismiss were then filed by: state defendants, the EOCD and its Secretary, Amy Anthony; city defendants, the BHA, its Administrator, Doris Bunte, and its court-appointed receiver, Boston Mayor Raymond L. Flynn; and federal defendants, HUD, its Secretary, Samuel Pierce,[1] and its Office of Fair Housing and Equal Opportunity Regional Director, Robert La Plante. Opposition was timely filed by plaintiffs.

Prior to the preliminary injunction hearing, Boston City Councillor James M. Kelly withdrew as a named plaintiff. The case was stayed until the remaining individual plaintiff public housing applicants secured counsel.

On February 3, 1989, the plaintiffs filed an amended complaint, along with a withdrawl of their preliminary injunction motion and a request for a hearing on the injunctive relief prayer of their amended complaint. The defendants filed motions opposing injunctive relief, renewed their motions to dismiss and requested, in the alternative, summary judgment treatment under Fed.R.Civ.P. 12(c). The plaintiffs timely filed opposition.

---

1. Pursuant to Fed.R.Civ.P. 25(d), current HUD Secretary Jack Kemp has been substituted as defendant for former Secretary Pierce.

## Statement of the Case

On October 14, 1987, HUD issued preliminary findings of discriminatory BHA tenant selection and assignment practices and noncompliance with Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq.*. In an effort to fashion a remedy which would affirmatively further integration in Boston public housing, the BHA and HUD executed a voluntary agreement on June 14, 1988 to provide relief for those BHA minority applicants who had been discriminated against in the past and to implement race-neutral tenant selection and assignment procedures.

The agreement ordered the BHA to abandon its policy of filling vacancies from several development-specific waiting lists and, instead, to place all BHA applicants on a centralized city-wide waiting list created solely by date of application. The VCA identified categories of persons who had been adversely affected by past discriminatory BHA practices and mandated remedial housing priorities for these disadvantaged applicants. The VCA, including its conversion to a city-wide list, was implemented in June of 1988 to remain in effect pending approval of a new tenant selection plan.

On August 26, 1988, the BHA signed a court-approved Stipulation in *N.A.A.C.P. v. Boston Housing Authority, supra* at 1, which broadened the category of disadvantaged applicants under the VCA and established a hearing process for BHA tenants who allege they were victims of racial steering.[2]

Plaintiffs assert that the VCA, particularly its mandate of a city-wide public housing list, discriminates against both white and minority applicants. The conversion to a single city-wide list altered the positions of all applicants previously on separate racially steered development-specific waiting lists. Each plaintiff's applicant status changed from a chronological placement on one or more of the twenty-six BHA development lists to a much higher number indicating their placement status on the consolidated city-wide list.[3] Aside from their individual change in placement status, plaintiffs allege that the VCA promotes discrimination and racial compacting by confining the placement of BHA minority applicants to Boston developments as opposed to regional, metropolitan public housing units outside the city.

The amended complaint presents six counts. Count I seeks declaratory relief under Title VI, 42 U.S.C. §§ 2000d, *et seq.*, requiring HUD to expand the scope of its Title VI review to areas contiguous to Boston to eradicate racial compacting within the city. Count II charges federal and city defendants with a violation of Title VI by approving a segregative VCA and depriving plaintiffs of an opportunity to reside in federally assisted public housing free from racial discrimination. Count III charges federal and city defendants with a violation of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601 *et seq.*, by approving a VCA which promotes segregation. Count IV charges state and city defendants with a violation of 42 U.S.C. § 1981

---

**2.** The plaintiffs in *N.A.A.C.P. v. Boston Housing Authority, supra* at 1, also challenged the VCA, alleging that current HUD Title VI enforcement efforts are inadequate to remedy past unlawful BHA discrimination against blacks. On October 4, 1989, Judge Joseph L. Tauro signed a Settlement Agreement which governs the parties in *N.A.A.C.P. v. B.H.A.* and avoids "potentially divisive and protracted litigation." Settlement Agreement at 1.

The Settlement Agreement outlines a procedure for identifying the class and dispursing cash payments to hundreds of minority families who were the victims of past discriminatory BHA policies. Judge Tauro vigorously monitored and pursued this settlement, as well as the earlier stipulation agreements between the parties, which were "made possible only by more

than a year of extremely difficult and challenging negotiations." Remarks of U.S. District Judge Joseph L. Tauro Re: *N.A.A.C.P. v. B.H.A.* (Oct. 4, 1989) at 1.

**3.** For example, under the VCA conversion, plaintiff McGrath moved from number fourteen on a development-specific waiting list to number 3,756 on the city-wide list; plaintiff Katramados moved from development-specific number three to city-wide number 2,607; plaintiff Madej moved from development-specific number 213 to city-wide number 3,026; plaintiff Morris moved from development-specific number thirteen to city-wide number 996; plaintiff Perry moved from development-specific number eleven to city-wide number 848.

through the EOCD failure to monitor the BHA and prevent the implementation of a discriminatory VCA, thereby depriving plaintiffs of their rights under the fifth and fourteenth amendments to the United States Constitution as well as under Title VI and Title VIII.[4] Count VI also charges state and city defendants with depriving plaintiffs of the above constitutional and statutory federal rights through a violation of 42 U.S.C. § 1983 by the EOCD failure of its monitoring, funding and statistical duties and by permitting racial compacting within BHA public housing.

Plaintiffs seek class certification, declaratory relief, the enjoining of the VCA-mandated city-wide list and reinstitution of development-specific BHA waiting lists.

## I.

■ Federal jurisdiction under Article III of the Constitution requires litigants to have standing to invoke the powers of the court. *See Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), *reh'g denied*, 468 U.S. 1250, 105 S.Ct. 51, 82 L.Ed.2d 942 (1984). Standing doctrine embodies three elements: (1) a plaintiff must have a "personal stake" in the lawsuit's outcome, as evidenced by "injury in fact" or "distinct and palpable injury" to the plaintiff; (2) such injury must have a "fairly traceable" causal connection with the alleged unlawful conduct of the defendant; and (3) there must be a "substantial likelihood" that the requested relief will redress the alleged injury. *N.A.A.C.P. v. Harris*, 607 F.2d 514, 518 (1st Cir. 1979) (quoting *Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 72, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978)). *See also Allen v. Wright*, 468 U.S. at 751, 104 S.Ct. at 3324 ("A plaintiff must allege personal in-

jury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.") The plaintiffs here fail to meet the above requirements for standing.

■ To confer standing, an alleged injury must be judicially cognizable. *Id.* at 752, 104 S.Ct. at 3325. The VCA eliminated development-specific waiting lists and altered plaintiffs' BHA applicant status. Although these grievances are not the focus of plaintiffs' amended complaint, such injuries are not legally cognizable. "[T]here is no federally protected right to low income public housing," *see Schmidt v. Boston Housing Authority*, 505 F.Supp. 988, 996 (D.Mass.1981) (citing *Acevedo v. Nassau County*, 500 F.2d 1078 (2d Cir. 1974)), and "there is no federally protected right to housing in a particular community." *Schmidt*, 505 F.Supp. at 995.

■ The plaintiffs primarily assert that through implementation of the VCA citywide list, the defendants have deprived them of the opportunity to reside in public housing free from racial discrimination by compacting minorities into Boston developments instead of dispersing BHA minority applicants into metropolitan communities. The plaintiffs, however, are not directly injured by the alleged lack of region-wide housing opportunities. They do not claim to have been confined to Boston against their wishes. They, as all BHA applicants, are free to petition public housing authorities outside the city. Furthermore, whatever injury minorities may suffer from the alleged lack of region-wide housing placements cannot inure to the benefit of non-minority plaintiffs. The plaintiffs have no direct injury, hence no standing, to bring a grievance based on the alleged lack of metropolitan housing opportunities for BHA minority applicants.[5]

---

4. Plaintiffs did not include a charge numbered Count V in their amended complaint.

5. Plaintiffs refer to *Trafficante v. Metropolitan Life Insurance*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), where the Court found that a white tenant had standing to bring a Title VIII claim against an apartment complex owner who allegedly racially discriminated against non-white rental applicants. The Court emphasized,

however, that *Trafficante* plaintiffs had alleged an individual injury in fact—"the alleged injury to existing tenants by exclusion of minority persons from the apartment complex ... [and] the loss of important benefits from interracial associations." *Id.* at 209–210, 93 S.Ct. at 367. Plaintiffs here have not alleged a lack of opportunity for interracial relations in BHA housing, nor

The plaintiffs also lack proper standing because there is no fairly traceable causal connection between the challenged harmful conduct of the defendants and plaintiffs' alleged injury. *See Allen v. Wright,* 468 U.S. at 751, 757, 104 S.Ct. at 3327. Defendants HUD and BHA entered negotiations and signed the VCA pursuant to 24 C.F.R. §§ 1.7(d) and 1.8(d), in an attempt to bring the BHA into Title VI compliance through a cooperative, non-litigious process. There is no causation between the VCA remedy for past BHA discriminatory practices and the alleged lack of HUD region-wide public housing for minorities. Similarly, there is no causation between the VCA city-wide list based on date of application and the alleged injury of too many minority applicants compacted into BHA housing developments.

Finally, the plaintiffs fail to meet the third requirement for standing. The remedy they seek will not redress the injury they allege. Their claim of suffering from racial discrimination under the VCA will not be mitigated by reinstitution of development-specific waiting lists. Development-specific lists, as determined by HUD in their preliminary findings of October 14, 1987, exacerbate racial steering and promote segregative public housing practices within the BHA.[6] Additionally, plaintiffs' request for region-wide placement of BHA minority applicants would not affect BHA's obligation under the VCA, or HUD's obligation under 24 C.F.R. § 1.4(b)(2)(ii), to place all applicants from a city-wide list. Plaintiffs make no allegations regarding the availability of region-wide housing, or, given such availability, that minority applicants to BHA developments would decrease. There also is no indication, and the amended complaint does not allege, that metropolitan placement of minority applicants would afford plaintiffs faster access to the BHA development of their choice.

The plaintiffs have failed to demonstrate a personal, judicially cognizable injury in fact that is both fairly traceable to the allegedly illegal conduct of the defendants and capable of being redressed by the requested relief. Accordingly, they lack proper standing. *See Allen v. Wright,* 468 U.S. at 751, 104 S.Ct. at 3324; *N.A.A.C.P. v. Harris,* 607 F.2d at 518. Furthermore, since the plaintiffs lack individual standing to maintain this action, they may not seek relief on behalf of a class. *See O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Britt v. McKenney,* 529 F.2d 44, 45 (1st Cir.1976), *cert. denied sub nom. Burden v. McKenney,* 429 U.S. 854, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976).

## II.

The plaintiffs have challenged the VCA and asserted claims against federal and city defendants under Title VI and Title VIII. The amended complaint also charges state and city defendants with violations of 42 U.S.C. §§ 1981 and 1983 by depriving plaintiffs of rights secured by Title VI, Title VIII, as well as the fifth and fourteenth amendments. Assuming, *arguendo,* that the plaintiffs do have standing to maintain this action, they have nevertheless failed to state a claim upon which relief can be granted for each of the alleged defendant violations.

## A.

■ Racially disproportionate impact alone will not suffice to render official action unconstitutional. *Washington v. Davis,* 426 U.S. 229, 239–40, 96 S.Ct. 2040, 2047–48, 48 L.Ed.2d 597 (1976). Proof of racially discriminatory intent or purpose is required to find official acts violative of the Equal Protection Clause. *Washington v. Davis,* 426 U.S. at 239–42, 96 S.Ct. at 2047–49; *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). Similarly, the plaintiffs must show that the defendants had an intent to discriminate in order to prevail on their constitutional and statutory claims, excepting Title VIII. 42 U.S.C. § 1981 can be violated only by pur-

---

have they claimed a similar legally cognizable injury.

**6.** *See* Amended Complaint, Ex. 1, HUD Letter of Oct. 14, 1987 to Mayor Raymond Flynn.

poseful discrimination. *General Building Contractors Ass'n v. Pa.*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Proof of invidious intent is still required for full statutory relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq. See Guardians Ass'n v. Civil Service Comm'n, City of New York*, 463 U.S. 582, 608 n. 1, 103 S.Ct. 3221, 3223 n. 1, 77 L.Ed.2d 866 (1983). The plaintiffs have failed to demonstrate the racial animus of defendants that is required for Title VI, § 1981 and constitutional claims.

■ In HUD's preliminary report of Title VI noncompliance and discriminatory practices by the BHA, HUD determined that "BHA developments continue to be racially segregated or racially identifiable; minority tenants wait, on average, nine months longer than whites for a housing unit, and although minorities make up 83.5% of the waiting lists they have received only 48% of the unit assignments during the two year period covered by this review."[7] In order to bring the BHA into Title VI compliance, HUD and the BHA immediately entered discussions pursuant to 24 C.F.R. § 1.7(d). The VCA was formulated after months of administrative negotiations. The defendants' intent was to eradicate discrimination and segregation within BHA public housing and to provide relief for victims of past BHA discrimination and racial steering.

The remedial provisions of the VCA govern both white and minority BHA tenants and applicants. Under the VCA, individuals are prioritzed on a city-wide list based solely upon date of application. The city-wide list, which displaces the former BHA development-specific lists, is race-neutral and color-blind. The defendants intended the VCA to compensate for past discriminatory BHA practices and to foster integration within Boston public housing developments.

The plaintiffs indicate that the VCA is not discriminatory *per se.*[8] Indeed, the defendants harbored the antithesis of discriminatory intent throughout the VCA formulation process. It would distort the definition of racial animus to hold that the defendants' motive to eradicate discrimination and counteract segregation, which prompted the VCA, can constitute purposeful, invidious, discriminatory intent as required by the Constitution, Title VI and § 1981. Lacking an intent to discriminate by defendants, the plaintiffs' claims under Title VI, § 1981 as well as the fifth and fourteenth amendments, must fail.

**B.**

The plaintiffs' charge against federal and city defendants under The Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3604 *et seq.*, does not require proof of discriminatory intent. *See Schmidt*, 505 F.Supp. at 994; *Arlington Heights*, 429 U.S. at 265, 271, 97 S.Ct. at 563, 566 (remanding equal protection claim for failure to prove discriminatory intent and implying Title VIII claim is satisfied by proof of discriminatory effect). The applicable Title VIII provision is § 3608(e)(5) which requires HUD to administer its programs in a manner affirmatively to further fair housing.

■ Under Title VIII, HUD has broad discretionary powers with which to implement its policies and fulfill its affirmative obligation to support fair housing. *See N.A.A.C.P. v. Secretary of Housing and Urban Dev.*, 817 F.2d 149, 157 (1st Cir. 1987) ("Clearly, HUD possesses broad discretionary powers to develop, award, and administer its grants and to decide the degree to which they can be shaped to help achieve Title VIII's goals."); *cf. Shannon v. United States Department of Housing & Urban Dev.*, 436 F.2d 809, 819 (3d Cir. 1970) (HUD has broad discretion which "must be exercised within the framework of the national policy against discrimination

**7.** Amended Complaint, Ex. 1, *supra* note 6 at 2.

**8.** Reponse to Defendant United States Department of Housing and Urban Development's Op-

position to Plaintiffs [sic] Motion for Preliminary Injunction at 8.

in federally assisted housing [Title VI] and in favor of fair housing [Title VIII].").

█ Title VIII does not mandate specific actions or remdial plans which HUD should undertake. The VCA was properly executed in response to HUD's Title VI investigation of the BHA. The plaintiffs have no legal claim to federal public housing, to a particular status on BHA waiting lists, or to a development-specific waiting list itself. *See Schmidt,* 505 F.Supp. at 995–96. They also have no legal basis under Title VIII to require HUD to place minority BHA applicants in regional public housing developments.

The plaintiffs' primary complaint is to prevent racial compacting within Boston by mandating that HUD expand its VCA scope to areas contiguous to the city.[9] Title VIII, however, does not impose a duty upon HUD to disperse minorities outside Boston;[10] it simply requires that HUD enforce its regulations and administer its programs on the basis of equal opportunity and free from discrimination. The VCA ensures that both whites and minorities who apply for BHA housing are treated equally, and it orders the BHA to abandon its past segregative tenant selection and assignment policies.

The plaintiffs' suggested remedy of region-wide placement of BHA minority applicants also runs afoul of the constitutional safeguards governing classifications based on race. Race-conscious remedies must be justified by a compelling state interest and be narrowly tailored to achieve that goal. *Wygant v. Jackson Board of Education,* 476 U.S. 267, 274, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986); *cf. City of Richmond v. J.A. Croson Co.,* — U.S. —, 109 S.Ct. 706, 723–28, 102 L.Ed.2d 854 (1989) (finding that race-based remedies also require the identification of past discrimination).

HUD investigated the BHA and reported findings of Title VI violations. The VCA is narrowly tailored to remedy the past discrimination *within* the BHA. The plaintiffs make no findings or allegations of discrimination against current BHA minority applicants or against minorities in regional public housing authorities. They do not allege that minorities are confined to Boston against their wishes; that minorities are prevented or discouraged from applying for housing in metropolitan communities; or that minorities are underrepresented in relation to their population in public housing developments outside the city. Mandating region-wide placement of minorities who choose to apply for public housing in Boston would grant BHA minority applicants priority over general applicants in other communities where there has been no evidence of discrimination. While "innocent persons may be called upon to bear some of the burden" of a race-conscious remedy, that remedy must be limited in scope and narrowly tailored to cure the effects of prior discrimination. *Wygant,* 476 U.S. at 281, 106 S.Ct. at 1850.

The Supreme Court has required proof of region-wide discrimination, or the likelihood of a segregative impact region-wide from intra-city discrimination, in order to justify imposing a metropolitan remedy and burdening innocent parties in other communities. *See Milliken v. Bradley,* 418 U.S. 717, 744–45, 94 S.Ct. 3112, 3127, 41 L.Ed.2d 1069 (1974) (invalidating multidistrict remedy where school districts outside Detroit were not found to have discriminated through segregation). *See generally Swann v. Charlotte–Mecklenburg Bd. of Education,* 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971) (noting that the scope of the remedy is determined by the nature and extent of the constitutional violation).

9. The city defendants named in this Title VIII claim have no constitutional duty or statutory authorization to make metro-housing placements outside the BHA jurisdiction.

10. One of Title VIII's sponsors expressly disavowed such "social engineering" to mandate integration under the act, stating: "[Title VIII]

does not require that the government dictate some master plan for massive resettlement of a population; it does require that government meet its responsibilities to assure equal opportunity for all citizens to acquire the goods and necessities of life." 114 Cong.Rec. 2525 (1968) (Senator Brooke).

In those cases where metropolitan remedies have been sanctioned, the defendant HUD was already held to be in violation of its constitutional and statutory duties. *See Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976) (upholding region-wide remedy where HUD had been found to have violated the fifth amendment and Title VI by knowingly funding the Chicago Housing Authority's discriminatory public housing program); *N.A.A.C.P., Boston Chapter v. Jack Kemp, Secretary of Housing and Urban Dev.,* 721 F.Supp. 361 (D.Mass.1989) (requiring HUD-assisted landlords in metropolitan areas to participate in an affirmative action program where HUD had been found to have violated Title VIII through the discriminatory administration of its Community Development Block Grant and Urban Development Action Grant programs).

HUD has not violated its Title VIII duty to promote fair housing by implementing the VCA in order to redress discrimination and segregation within the BHA. There are no allegations of racial discrimination in public housing authorities outside Boston. The plaintiffs' request to mandate the region-wide placement of BHA minority applicants is not narrowly tailored to eradicate the discriminatory and segregative practices within the BHA and would violate the *Wygant* standard for race-conscious remedies.

### C.

The remaining claim charges state and city defendants with a violation of 42 U.S.C. § 1983 by depriving plaintiffs of rights secured under the fifth and fourteenth amendments, Title VI and Title VIII. To prevail under § 1983, plaintiffs must "demonstrate that the [defendants] acting under color of Massachusetts law, deprived [them] of a right secured by the federal Constitution or federal law." *Siano v. Justices of Massachusetts,* 698 F.2d 52, 56 (1st Cir.1983), *cert. denied,* 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 91 (1983). The above analyses, *see* II.(A) and (B), *supra* at 9–15, nullify this § 1983 claim.

In the absence of purposeful discrimination by defendants, the plaintiffs fail to present a cause of action under their constitutional and Title VI claims. *See* II.(A), *supra* at 9–11; *see also Schmidt,* 505 F.Supp. at 992–93 ("Proof of a racially discriminatory intent is required to hold ...official acts violative of ...42 U.S.C. § 1983.") (citations omitted).

Since the amended complaint also fails to state a Title VIII violation, *see* II.(B), *supra* at 11–15, the plaintiffs have presented no deprivation of any federal right by state and city defendants. Accordingly, the plaintiffs' claim under 42 U.S.C. § 1983 must fail.

### *Conclusion*

The VCA, implemented in June of 1988, is the product of defendants' exhaustive investigative, administrative and enforcement efforts. As such, it is entitled to judicial deference. *See, e.g., Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir.1980) ("[A]dministrative remedies or sanctions are subject to a very limited judicial review.").

Finding that the plaintiffs both lack standing and have failed to state a claim upon which relief can be granted, the amended complaint is dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). This ruling is dispositive of plaintiffs' prayers for class certification and preliminary injunction.

In accordance with the foregoing, the defendants' motions to dismiss are granted and the complaint dismissed.

SO ORDERED.