John P. ABATO, Plaintiff,

v.

MARCAM CORPORATION, Paul A. Margolis, David Cairns and Stephen J. Lifshatz, Defendants.

Civ. A. No. 94–11625–WGY.

United States District Court, D. Massachusetts.

June 20, 1995.

Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, for plaintiff.

Scott A. Birnbaum, Amy M. Karp, Susan Krueger, Testa, Hurwitz & Thibeault, Boston, MA, for defendants.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

The plaintiff John P. Abato ("Abato") brings this class action against Marcam Corporation and three of its officers and directors (collectively "Marcam" or the "company") on behalf of all persons who purchased Marcam common stock between October 22, 1991 and October 7, 1993. Abato alleges that in an attempt to expand the company's product line, Marcam issued materially false and misleading statements about the company's financial condition with the intent artificially to inflate Marcam's stock in violation of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.A. §§ 78j(b), § 78t(a) (West 1981), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (1994).

Marcam here moves to dismiss the Amended Complaint arguing that (a) Abato failed to plead loss causation; (b) Abato lacks standing to maintain a claim for conduct occurring after his purchase of stock because such con-

duct did not occur "in connection with the purchase or sale of a security"; and (c) Stephen Lifshatz is not a "control person" and therefore should be dismissed.

## I. BACKGROUND [1]

Founded in 1980, Marcam is a computer consulting company which assists manufacturers in implementing and customizing IBM mainframe computers. Marcam is also the developer of its own line of application software products—PRISM software—for process manufacturers. Prior to 1991, PRISM software was sold in European markets by distributors in Italy, Belgium, and the Netherlands. In 1991, Marcam entered into a number of transactions to invest in and take control of its European distributors.

On October 22, 1991, the first day of the class period, Marcam issued a press release in which it claimed revenue for the year of $56.5 million and net income of $5.3 million. Marcam filed its Form 10–K with the SEC on December 27, 1991, confirming the figures presented in the October press release. Abato alleges that these figures were materially false and misleading because Marcam failed to consolidate the significant losses of its Italian, Dutch, and Belgian subsidiaries as required by Accounting Principles Board Statement 4; Rule 3A–02 of SEC Regulation S–X; and Rule 1–02(w) of SEC Regulation S–X.[2] Had consolidation taken place, so Abato claims, the true net income would have been only $3.6 million—not $5.3 million as reported. This would have constituted a reduction in net income compared with the $4.2 million net income reported in the previous fiscal year. The reporting of this inflated income had a highly favorable effect on the market price of Marcam's stock which went from approximately $16 per share in the fall of 1991 (when Marcam announced its purported 26 percent earnings increase) to almost $30 per share by February, 1992. Abato alleges that had Marcam reported the actual 38 percent drop in earnings between

fiscal 1990 and 1991, the price of its stock would have dropped.

As in 1991, Marcam and its subsidiaries failed to consolidate in fiscal year 1992. In fiscal 1993, Marcam began to consolidate the results of two of the European subsidiaries. In August, 1994, Marcam announced that it should have consolidated all three of the European entities as of fiscal 1991, and announced it would restate its financial results for the previous years.

Abato argues that because Marcam reported earnings throughout the class period that were far more favorable than the company's true earnings, Marcam's stock price was inflated. Abato and other members of the class lost a large part of their investment based on the drop in price of Marcam common stock in the fourth quarter of 1993—the point at which Marcam announced it would consolidate in 1993. Abato alleges that this loss was caused by Marcam's failure to consolidate in 1991.

Abato also alleges that the market price of Marcam common stock was further artificially inflated due to Marcam's fraudulent accounting treatment of another transaction. In October of 1992, Marcam announced that it would purchase the worldwide rights to IBM's MAPICS software for 1,615,000 shares of Marcam common stock. The stock to be used in that transaction was allegedly inflated because of the materially false and misleading statements for fiscal years 1991 and 1992. Moreover, in its 8–K form to the SEC, Marcam falsely described this transaction as the acquisition of only the "exclusive worldwide marketing rights" to the MAPICS product line, when, in fact, Marcam acquired all right, title, and interest in this product line through an installment purchase. Because Marcam treated this transaction as if it had merely received a marketing license, Marcam was able artificially to minimize the impact of the transaction on its second quarter and year end 1993 earnings. Ultimately,

---

1. For purposes of this motion, the facts are presented in the light most favorable to the non-moving party, in this instance Abato.

2. Abato alleges that Marcam exercised effective control over subsidiaries in Belgium, Italy, and

the Netherlands because, in part, Marcam controlled the use of the Marcam name and the Marcam products and services were the almost exclusive source of revenue for these entities.

as with the European subsidiaries, Marcam admitted that the economic substance of the transaction was starkly different than what they had represented in earlier disclosures and announced that their 1993 financial statements had to be restated properly to account for this transaction.

Abato contends that these acts were part of a concerted scheme to expand Marcam's product line through acquisitions using artificially inflated stock. He alleges that in furtherance of this scheme, Marcam made materially false and misleading statements about the company's financial condition for the fiscal years 1991, 1992, and 1993 in press releases, annual reports, and 10–Q and 10–K forms. The financial results for all three years were materially false and misleading due to Marcam's failure properly to account for the acquisition of its European subsidies; the 1993 reported results were further materially false and misleading due to the MAPICS transaction.

## II. PROCEDURAL POSTURE

This Court set oral argument for March 28, 1995 at the New England School of Law. At the motion session, the Court denied from the bench Marcam's motion to dismiss for failure to plead loss causation and Marcam's motion to dismiss Stephen J. Lifshatz. It took the question of Abato's standing under advisement.

## III. DISCUSSION

Marcam argues that the complaint should be dismissed because Abato lacks standing to maintain this action. Specifically, Marcam argues that because Abato purchased his stock on November 18, 1992 and the MAPICS transaction did not close until February 26, 1993, the alleged fraudulent misstatements or omissions with respect to MAPICS were not made "in connection with the purchase or sale of . . . [a] security" as required by section 10(b) of the Exchange Act and SEC Rule 10b–5. 15 U.S.C.A. § 78j(b) (West 1981); 17 C.F.R. § 240.10b–5 (1994);

see also *In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1531 (D.Mass.1991) (Harrington, J.) ("a plaintiff has standing to sue under Section 10(b) only if that plaintiff, in fact, engaged in a transaction for the purchase or sale of securities" as a result of the alleged misstatements); *Konstantinakos v. FDIC*, 719 F.Supp. 35, 37 (D.Mass.1989) (Tauro, J.) (for a misrepresentation or omission to be actionable it must have been made in relation to a specific purchase or sale of a security).

Some courts have adopted a strict interpretation of this rule. These courts hold that because it is impossible for a plaintiff to be misled by statements issued *after* the transaction is complete, a named plaintiff in a class action has standing to challenge *only* those events occurring *prior* to the date of her last purchase or sale. *See Bank of Boston*, 762 F.Supp. at 1531, 1532; *Adair v. Sorenson*, 134 F.R.D. 13, 16 (D.Mass.1991) (Harrington, J.) (named plaintiff cannot rely on events which occurred after he purchased his stock regardless of when unidentified class members were injured).[3]

Abato cites what appears to be a competing line of cases which hold that a named plaintiff may represent claims arising from alleged misstatements made after her purchase or sale *if* the misstatements were made in furtherance of a "common course" of conduct to defraud. *See Robbins v. Moore Medical Corp.*, 788 F.Supp. 179, 187 (S.D.N.Y. 1992); *Priest v. Zayre Corp.*, 118 F.R.D. 552 (D.Mass.1988) (Zobel, J.); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311–12 (D.Mass.1987) (Wolf, J.) ("earlier purchasers can properly represent later purchasers when the basis of the claim is the type of common course of conduct alleged in the instant case").

■ The "common course of conduct" cases, however, involve class certification under Rule 23 of the Federal Rules of Civil Procedure. *See* FED.R.CIV.P. 23. Although the analysis is similar, the question of wheth-

---

**3.** *Cf. Warth v. Seldin,* 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975) (the Court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members); *Boyle v. Merrimack Bancorp, Inc.,* 756 F.Supp. 55, 61–62 (D.Mass.1991) (same).

er a named plaintiff has standing to assert a claim is an inquiry altogether separate from the question of whether the named plaintiff meets the "typicality" requirement of Rule 23. *See Adair*, 134 F.R.D. at 16 n. 3 ("[t]he issue of standing . . . must be overcome before the Court considers the typicality of claims required by Rule 23"). Although the issue is far from clear, it seems to this Court that the "common course of conduct" theory applied in the Rule 23 context is inapposite in the standing context. *See Priest*, 118 F.R.D. at 557 (a named plaintiff meets the "typicality" requirement of Rule 23 where "[t]he alleged misrepresentations are sufficiently related in time and in content to be construed as a common course of conduct *for purposes of class certification* ") (emphasis supplied); *Adair*, 134 F.R.D. at 16 n. 3 (cases addressing the typicality requirement of Rule 23 are inapplicable to the question of standing).

 Even assuming arguendo that the "common course of conduct" theory applies to questions of standing, Abato's claim must fail. In *Kirby*, Judge Wolf explained that the "common course of conduct" theory applies where the plaintiff "points to specific and identified documents which are alleged to contain interrelated and cumulative misrepresentations." *Kirby*, 116 F.R.D. at 312 (citation omitted). Likewise, Judge Zobel has explained that a common course of conduct can refer to the issuance of different documents where the documents repeat the same misrepresentation. *See Priest*, 118 F.R.D. at 556.

In this case, although it is arguable that both the alleged misstatements filed with the SEC with respect to MAPICS and those filed with respect to the European subsidiaries constitute part of a common scheme to defraud investors, the MAPICS transaction and the transaction involving the European subsidiaries are two entirely separate events. The transactions involve different assets, different accounting rules, entirely different time periods, and different al-

leged misrepresentations. Indeed, the only link between the two transactions alleged by Abato is that in both instances the accounting treatment was similarly fraudulent.[4] The assertion of a fraudulent modus operandi, however, is—without more—insufficient to constitute "a common course of conduct" for purposes of the standing requirement.

## IV. CONCLUSION

For the above stated reasons, Marcam's motion to dismiss the amended complaint for lack of standing is ***GRANTED*** to the extent that the complaint asserts claims arising from the MAPICS transaction. With respect to all other causes of action, the motion to dismiss is ***DENIED*** and the complaint stands.

---

4. Defendants accounted for the [ ] transaction[s] by violating the same accounting principles.... [In both cases, the defendants] us[ed] the legal form of the transaction to achieve a far more favorable result on Marcam's financial statements than the results that were re-

quired based on the economic substance of the transaction.... Defendants' plan, scheme and course of conduct involved the expansion of Marcam's product line through acquisitions using artificially inflated Marcam stock.
Complaint ¶¶ 57, 80.