Edward P. GRACE III, Samuel Orr,
David Perkins and Irwin
Spivak, Plaintiffs,

v.

PERCEPTION TECHNOLOGY CORPO-
RATION, Joseph W. Scally, Leon A.
Ferber, Harry J. Healer, Jr., Robert L.
Massard and William Wolfson, Defen-
dants.

Civ. A. No. 88–2358–H.

United States District Court,
D. Massachusetts.

Nov. 16, 1989.

Deborah L. Thaxter, P.C., Jo Frances Kaplan, Peabody & Brown, Boston, Mass., Robert G. Flanders, Jr., Jeffrey C. Schreck, Flanders & Medeiros, Inc., Providence, R.I., for plaintiffs.

Edmund C. Case, Wayne M. Carlin, Testa, Hurwitz & Thibeault, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiffs are purchasers of shares of the common stock of Defendant Perception

Technology Corporation (PTC). Plaintiffs allege that PTC's registration statement, prospectus and subsequent SEC filings and public statements were false and misleading as to the company's financial status and operations in general, and that defendants knowingly failed to disclose the true facts to the investing community.

The case is before the Court on plaintiffs' motion for certification of a class consisting of purchasers of PTC common stock from June 4, 1986 to December 29, 1987 and who sustained a loss as a result or consequence of those purchases. Excluded from the proposed class are the defendants named in this action, and any persons or entities controlled by them, and any present or former officers, directors, or employees of PTC.

There is little question that suits on behalf of shareholders alleging violations of federal securities laws are prime candidates for class action treatment and that Rule 23 of the Federal Rules of Civil Procedure has been liberally construed to effectuate that end. *Sley v. Jamaica Water & Util., Inc.*, 77 F.R.D. 391 (E.D.Pa.1977); *Kahan v. Rosenstiel*, 424 F.2d 161 (3d Cir.); *cert. denied*, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); *Baum v. Centronics Computer Corp.*, [1986–1987 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,797 at 93,898, 1986 WL 15784 (D.N.H. May 15, 1986). Furthermore, district courts have broad discretion when determining issues of class certification. *Priest v. Zayre Corp.*, 118 F.R.D. 552 (D.Mass.1988); *Baum* at 93,898. Nevertheless, the party seeking class certification bears the burden of showing that the requirements of Rule 23 have been met. Rule 23(a) identifies the following prerequisites to class certification:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs must also show one of the three alternative requirements of Rule 23(b). Here plaintiffs have chosen to show the requirements of Rule 23(b)(3), which provides, in pertinent part:

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Numerosity and Commonality*

Defendants do not dispute that plaintiffs satisfy the numerosity requirement for certification. Nor do they raise a valid argument that plaintiffs have not shown common questions of law or fact. Defendants have admitted that PTC's total shareholders are in excess of 300, amounting to approximately 1,350. As of January, 1988, there were over three million shares of stock outstanding, and plaintiffs allege that the stock was actively traded at that time. Even if the number of persons who bought stock during the class period is unknown, numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large. *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 305 (D.Mass.1987). "Federal trial courts are quite willing to accept common assumptions in order to support a finding of numerosity." *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1039 (5th Cir.1981).

Plaintiffs rely on fraud on the market in this case. As a result, all plaintiffs will have to prove the same misrepresentations and omissions, as well as their materiality and defendants' knowledge. Thus, it is obvious that common questions exist. Furthermore, as this motion is brought under Rule 23(b)(3), the requirements of Rule 23(a)(2) are largely irrelevant. *Abelson v. Strong*, [Transfer Binder 1986–87], Fed. Sec.L.Rep. (CCH) ¶ 93,365 at 96,885 (D.Mass.1987). I conclude that plaintiffs have met these two requirements for all proposed class representatives.

*Typicality*

Defendants argue that plaintiffs are atypical because their injuries were not caused by their reliance on the integrity of the market, but rather were caused by their reliance on unique information that is not generally available in the marketplace. Specifically, defendants contend that Plaintiff Grace purchased 90 percent of his PTC stock after a private meeting with two of the company's officers. Plaintiff Orr, who is the father-in-law of Grace, made his first purchase of PTC stock after Grace's meeting with PTC officers, and after discussing it with Grace. Defendants contend that Plaintiff Spivak, who was hired to do some advertising work for PTC, obtained confidential business information about the company which caused him to purchase PTC stock. Finally, defendants allege that Plaintiff Perkins capitalized on his friendship with one of PTC's research and development engineers, and decided to purchase the stock on the basis of the unique information that he obtained by virtue of that friendship. Def.Mem.Opp. 23–32.

Typicality is established by showing that the putative plaintiffs relied on the integrity of the market. *Tolan v. Computervision*, 696 F.Supp. 771, 778 (D.Mass.1988). When a case is brought under a fraud on the market theory, reliance on any public material misrepresentations is presumed. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 992, 99 L.Ed.2d 194 (1988). Plaintiffs are typical if they relied on the integrity of the market to determine the price and value of the securities in which they traded. *Tolan*, at 778. Plaintiffs have argued that, notwithstanding their conversations with PTC employees, they relied primarily on the integrity of the market, and that any information gained by those conversations was the type of information generally available to the public.

█ The fact that plaintiffs had different sources of information does not of itself defeat reliance on the integrity of the market. "Reliance on the market also includes reliance on 'statements of third parties that merely reiterated, digested or reflected the misstated [market] information

that forms the basis of the securities fraud claims.'" *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 307 (D.Mass.1987), *quoting Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 788 (N.D.Ill.1984); *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135 (D.Mass.1988). Similarly, relying on secondary analyses of financial statements, such as Moody's or Value Line, and the advice of stockbrokers and friends, will not destroy typicality. *In re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J.1984). "If ... factual differences of this nature were sufficient to defeat class action certification, there could never be a class action of securities purchasers." *Priest*, 118 F.R.D. at 555.

█ Defendants have failed to point to any facts that demonstrate either Perkins or Spivak did not rely on the integrity of the market. Spivak was hired by PTC to design a magazine advertisement. Defendants suggest that in his capacity as an employee for PTC, Spivak obtained confidential information on which he relied to purchase his stock. However, the only information defendants could point to that Spivak learned as a result of his employment was the fact that PTC was planning a continued advertising program. This type of information should be obvious to one hired to do advertising work. Whether the facts that he was hired to do advertising work and that the work might be longterm contributed to Spivak's decision to buy PTC stock does not destroy his reliance on the integrity of the market. Spivak also testified that he saw a framed prospectus in the lobby of PTC which contributed to his decision to buy the stock. I find that Spivak primarily relied on the integrity of the market and that his claims are typical of the unnamed class members.

█ Defendants suggest that Perkins capitalized upon his friendship with Brad Anselmo, one of PTC's research and development engineers, and decided to purchase the stock on the basis of the unique information that he obtained by virtue of that friendship. Def.Opp. p. 29. Yet there is no evidence in the record that Perkins' friend told Perkins anything that was not

available to the public. To deny Perkins representative status because an old college friend works for PTC would not further the purpose of the reliance doctrine. The issue is not who supplied the information upon which the plaintiff relied, but whether plaintiff *in fact* relied on the integrity of the market. *Tolan,* 696 F.Supp. at 778–79; *Biben v. Card,* Fed.Sec.L.Reptr. ¶ 92,462, at 92,826, 1986 WL 1199 (W.D.Mo. 1986) ("[r]eliance on the advice of third parties who serve simply as conduits of the defendants' misrepresentations and omissions does not make class certification less appropriate"); *Kirby,* 116 F.R.D. at 307; *Priest,* 118 F.R.D. at 554–55. Perkins also testified in his deposition that he had PTC's prospectus in his hands when he made his decision to buy the stock. This testimony is evidence of Perkins' direct reliance on defendants' alleged misrepresentations, and adequately supports a finding that Perkins relied on the integrity of the market.

■ Although reliance on factors other than the market does not necessarily destroy the presumption of reliance in fraud on the market cases, the non-market information relied upon must be derived from market sources. If a purchaser of stock relies on non-market information that is not generally available to the public, and hence to the unnamed class representatives, then that purchaser cannot be said to have relied on the integrity of the market. Even though questions of reliance "virtually disappear" when plaintiffs employ a fraud on the market theory, *see Tolan,* 696 F.Supp. at 778, and cases cited, if a plaintiff has relied on non-market information that plaintiff may be subject to unique defenses at trial. *See Kirby,* 116 F.R.D. at 306. Such a plaintiff could hurt the class he seeks to represent by having to litigate issues that solely relate to his special reliance. The fraud on the market theory is specifically aimed at protecting open market purchasers who did not directly rely on any representations regarding the stock.

*Kirby,* 116 F.R.D. at 307; *Abelson and Irving Malis v. Strong,* 644 F.Supp. 524, 528 (D.Mass.1986). Thus, if a plaintiff relies on representations, specifically those which are not available through market sources, then he cannot be said to have relied on the integrity of the market, and is atypical of those who have so relied.

■ Plaintiff Grace bought 90 percent of his stock after meeting with two of PTC's corporate officers. Plaintiff Orr made his first purchase after discussing with Grace the meeting with the PTC officers. In the course of that meeting, Grace had a "frank discussion" with Paul Yecies, PTC's Chief Financial Officer, during which Grace became privy to "a lot of information" about PTC. Grace Dep. at 90–102. Grace testified that he wanted to get a "hands on feeling" about the company and after this meeting Grace bought over 80,000 shares of PTC stock. Grace Dep. at 47.[1] Orr is charged with the same information as Grace because Orr made his first purchase after and pursuant to information learned through Grace at Grace's meeting with the PTC officers. Orr Dep. at 18–21.

The information Grace gained from his meeting at PTC and then passed on to Orr was not information generally available in the marketplace. It is beyond reality to suggest that any potential shareholder could meet with corporate officers to discuss information that was already available to the public. Personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class. *Zandman v. Joseph,* 102 F.R.D. 924 (N.D.Ind.1984); *see also Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D.Mass.1988). Grace and Orr were privy to some unique information about PTC before purchasing their stock. Consequently, they may be subject to unique defenses at trial which would divert attention away from the common claims of the class members they seek to represent.

1. It is interesting to note that plaintiff bought the majority of his stock after PTC's March 25, 1987 disclosure concerning the impact of TCNY's bankruptcy on PTC's financial status. Thus for a purchaser to buy 81,500 shares after

PTC's financial condition was publicly deteriorating, Grace must have received special information about the company from the corporate officers.

*Adequacy*

■ The inquiry demanded by Rule 23(a)(4) for meeting the adequacy of representation standard are: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) assurance of vigorous prosecution. *Kirby,* 116 F.R.D. at 308–09, *quoting Berenson v. Faneuil Hall Marketplace,* 100 F.R.D. 468, 470 (1984); *see also Tolan,* 696 F.Supp. at 780.

■ Defendants attack the ability of the named plaintiffs and their counsel to adequately represent the members of the class. This Court is convinced that plaintiffs' counsel will vigorously prosecute this action and are qualified to do so. The remaining issue is whether there are any conflicts between the named plaintiffs and members of the class that would make plaintiffs inadequate as class representatives.

Whether there is a conflict between a representative and the class members is fact specific to each case.

This issue is not, as has been suggested, a matter of accepting or rejecting a novel bright-line rule. A plaintiff is not disqualified under Rule 23.1 merely because of the existence of the interests beyond those of the class he seeks to represent, so long as he shares a common interest in the subject matter of the suit. And purely hypothetical, potential or remote conflicts of interest do not disable him. *G.A. Enterprises, Inc. v. Leisure Living Commun., Inc.,* 517 F.2d 24, 27 (1st Cir. 1975). In this case, defendants have instituted a counterclaim against Grace and Orr which, if successful, could make Grace and Orr liable to the class members for part of the losses. Without going into the merits of the counterclaim, it is sufficient to note that during the period of time in which plaintiffs originally sought to define the class,[2] Grace and Orr issued a press release[3] which may have had the effect of artificially inflating the price of the stock. This counterclaim is not so remote or hypothetical as to allow Grace and Orr to adequately represent a class to which they may be liable. In this case, the antagonism of interests goes to the subject matter of the suit; the conflict is immediate and obvious. *See G.A. Enterprises,* 517 F.2d at 27. Accordingly, this Court finds that Grace and Orr cannot adequately represent the interests of the class given the presence of a real and substantial conflict of interest.

■ The credibility questions raised by the defendants are not substantial enough to create a conflict between the Plaintiffs

2. Plaintiffs have moved to amend the class period to run from June 4, 1986 to October 26, 1987, instead of through December 29, 1987. Plaintiffs state, as grounds therefor, their inability to prove damages for class members who purchased their stock after PTC's public disclosure of October 26, 1987, which reflected previously undisclosed adjustments. This is a thinly veiled excuse to remove the serious conflict between Grace and Orr and the class members as a result of their press release of October 29, 1987. Consequently, this Court denies plaintiffs' motion to amend the class period.

3. The press release at issue in the counterclaim is as follows:

*News*

FOR IMMEDIATE RELEASE
*CONTACT:* Edward P. Grace III or Corinne Sylvia (401) 433–5980
*East Providence, RI, October 29, 1987*—Investor **Edward P. Grace III** said today that he and a group of Providence businessmen have acquired in excess of 156,000 shares, or 4.3% of the outstanding stock of **Perception Technology (NASDAQ National Market PCEP).** Grace said that the group intends at this time to initiate a shareholder derivative lawsuit against the Company management and the Board of Directors for gross negligence, mismanagement, and breach of fiduciary duties. Grace said that he and his group may also seek to gain control of Perception Technology through a variety of means, including open market or privately negotiated purchase transactions or pursuant to a tender offer. The group may also seek to solicit proxies for the election of their slate of Directors, which in turn, if elected, may seek to remove certain members of management.

Perception Technology designs, manufactures, markets, and supports a family of interactive information response systems that provide users with direct access to central computer databases through touch-tone telephones. The Company's stock price has declined from $30.50 in March to $3.00 today, although the Company has approximately $3.50 per share in cash, a book value of $5.80, and a current ratio of 11 to 1.
END

Spivak and Perkins and the members of the class. The credibility of the named plaintiffs can be examined at trial. Therefore, plaintiffs' "memory lapses" during depositions are insufficient to disqualify otherwise adequate class representatives. *See Tolan,* 696 F.Supp. at 780.

Defendants argue that Perkins and Spivak are nothing more than "window dressing"; that they have an inadequate understanding of the allegations in the complaint, and that they are unwilling to shoulder the costs of this litigation. A named plaintiff need not have personal knowledge of all the relevant facts to be an adequate representative. *Priest,* 118 F.R.D. at 556. It is sufficient if the named plaintiffs understand the issues behind the complaint, that they are dedicated to the vigorous prosecution of the case and are represented by counsel who are qualified to do so. Furthermore, there is nothing wrong with other class members contributing to the heavy expenses of litigating a class action suit. Requiring the named plaintiffs to shoulder the entire financial burden of a class action would surely deter many meritorious claims from being adjudicated. *See Abelson,* at 96,889. This Court finds that both Perkins and Spivak can adequately represent the unnamed class members.

*Predominance and Superiority*

In fraud on the market cases, common questions of law and fact predominate over individual questions. *Abelson,* at 96,889; *Kirby,* 116 F.R.D. at 311; *see also In re Bexar Cty. Health Fac. Dev. Corp. Sec. Lit.,* 125 F.R.D. 625, 633 (1989). The individual questions of damages do not outweigh the common questions of whether defendants made materially misleading statements or failed to disclose material information concerning the financial status of PTC.

The class action device is superior to other methods of adjudication in securities fraud cases. As in similar cases:

[t]he benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

*Kirby,* 116 F.R.D. at 303, *quoting Berenson,* 100 F.R.D. at 471.

*Pendant State Claims*

Plaintiffs have presented claims of common law fraud and negligent misrepresentation based upon the same conduct of defendants as the federal claims are based. Plaintiffs seek to have these claims certified for class treatment as well.

While the courts are split as to the treatment of pendant state claims, the recent trend is toward certification. *Priest,* 118 F.R.D. at 557. This Court has required that the plaintiffs demonstrate that the law of the different states either will not apply or will not vary significantly. *Priest,* at 557. A choice of law analysis must be performed to determine which state's law will govern. *Id.* at 558; *Gorsey v. I.M. Simon & Co. Inc.,* 121 F.R.D. 135, 140 (D.Mass.1988).

In order to comply with principles of due process, before a state can apply its law to a class under a choice of law analysis, it must have "sufficient contact or aggregation of contacts" to the claims asserted by members of a class. *Randle v. Spectran,* Civil Action No. 86-2970-K, United States District Court, District of Massachusetts, Order dated September 30, 1988 (Keeton, D.J.) [slip op. at 15–18], *quoting Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). In this case, PTC is headquartered and incorporated in Massachusetts. All of the individual defendants reside in Massachusetts and all alleged misrepresentations emanated in Massachusetts. Plaintiffs have sufficiently convinced this Court that Massachusetts law should apply to the pendant state law claims, and as such, these claims will be

certified for class representations as well. *See* Plaintiffs' Reply Mem. 67–70.

Accordingly, this Court holds that:

1. Plaintiffs' motion for class certification is granted as to David Perkins and Irwin Spivak, but denied as to Edward Grace and Samuel Orr;

2. Plaintiffs' motion to amend class certification period is denied; and

3. The pendant state law claims are certified for class treatment.