**Lincoln ADAIR, on behalf of himself
and all others similarly
situated, Plaintiff,**

v.

**Ralph Z. SORENSON, P. Norman Roy,
Charles H. Sellman, Eustis Walcott, Jr.,
Barry Wright Corporation, and Wright
Line, Inc., Defendants.**

Civ. A. No. 88–2385–H.

United States District Court,
D. Massachusetts.

Feb. 7, 1991.

**14**

Stephen Moulton, Moulton & Welbum, Boston, Mass., Lee S. Shalov, Michael C. Spencer, Milberg Weiss Bershad Specthrie & Lerach, New York City, for plaintiff.

Thomas J. Dougherty, George J. Skell, Dennis M. Kelleher, Janet Lee Goetz, Skadden, Arps, Slate, Meagher & Flom, Boston, Mass., for Barry Wright Corp. and Wright Line, Inc. and individual defendants.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Plaintiff is a purchaser of shares of common stock of Defendant Barry Wright Corporation (Barry Wright). Plaintiff alleges that the defendants, in May and August of 1988, disseminated materially false and misleading information to the investing public. This information, asserts the plaintiff, artificially inflated the price of Barry Wright's common stock during the time in which plaintiff bought stock.

The case is before the Court on plaintiff's motion for certification of a class consisting of purchasers of Barry Wright common stock during the period from January 5, 1988 through October 20, 1988, inclusive, and who sustained damages as a result thereof. Excluded from the proposed class are the defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any defendant.

### I. *Factual Background*

Barry Wright is a diversified industrial company with two subsidiaries, one of which is Wright Line, Inc. The complaint alleges that on January 5, 1988, Barry Wright publicly announced that its board of directors had authorized management to investigate a possible restructuring of the Company. The restructuring was to involve the sale of Wright Line to a then-unidentified entity. Proceeds from the sale of Wright Line were to be combined with other corporate funds for a cash distribution to non-management Barry Wright shareholders.

On May 10, 1988, defendants publicly announced a "Plan of Restructuring and Special Dividends" ("the Restructuring"). The Restructuring provided for the restructuring of the Company in two phases (Phase one and Phase Two). As a result of this announcement, the price of Barry Wright stock increased.

During Phase One shareholders would be paid a special cash dividend and the company would create an employee stock ownership plan ("ESOP"). Phase One was successfully completed on or about June 3, 1988.

Phase Two of the Restructuring, as announced on May 10, 1988, involved the sale of one of Barry Wright's subsidiaries, Wright Line, Inc., to a newly formed entity, Wright Acquisition Corporation. Phase Two also contemplated the sale of newly issued stock to the ESOP and the payment of another special cash dividend to shareholders. The special cash dividend was to be financed in large part by the sale of

Wright Line. Phase Two was not completed.

The plaintiff asserts that the May 10, 1988 announcement was misleading and deceptive and omitted to state material facts necessary to make the announcement not misleading. According to the complaint, the May 10 announcement failed to disclose, among other things, that:

(1) Wright Acquisition could terminate the Stock and Asset Purchase Agreement in the event that Wright Line suffered a "material adverse change" in its business, financial condition, assets or results of operations prior to closing;

(2) Members of Wright Line's senior management held significant interests in Wright Acquisition. The Wright Line transaction therefore involved self-dealing;

(3) Wright Line was subject to a possible assessment by one of its customers, the General Services Administration, of a $3.6 million price adjustment penalty;

(4) Wright Line had suffered material adverse events as of May 10, 1988, which caused it to be in a depressed financial condition.

On July 14, 1988, Barry Wright publicly announced that Wright Line's operating results were substantially below expectations and that, as a result, there existed a significant risk that Phase Two of the Restructuring would not occur as originally anticipated. Negotiations would continue.

On August 2, 1988, defendants announced that Barry Wright had reached an agreement with Citicorp Venture Capital Ltd. to amend certain terms of the Wright Line sale agreement. As a result of this announcement, the price of Barry Wright stock increased. According to the complaint, this August 2 announcement continued defendants' misleading and deceptive conduct. Among other things, the announcement was deficient in that:

(1) It for the first time made reference, to the existence of the "material adverse change" provision;

(2) It again failed to disclose the involvement of Wright Line senior management in Wright Acquisition;

(3) It again failed to disclose that Wright Line's worsening financial condition made consummation of the Agreement even more unlikely;

(4) Defendant Eustis Walcott, Jr., stated falsely that "there's now a higher likelihood that the transaction will be consummated."

(5) Defendant Ralph Z. Sorenson stated falsely that the "amendments to the Wright Line agreement increase the likelihood that the Company will be able to implement the actions contemplated by Phase Two of the Restructuring."

On October 10, 1988, Barry Wright announced that it had been informed by Wright Acquisition that due to Wright Line's negative operating results, there was a significant risk that the purchase of Wright Line could not be consummated as planned. There was thus a significant risk that Barry Wright could not proceed with Phase Two of the Restructuring. As a result, the price of Barry Wright stock dropped.

On October 19, 1988, Barry Wright announced that it was abandoning Phase Two of the Restructuring based upon Wright Acquisition's statement that it would not purchase Wright Line pursuant to the Agreement. The price of Barry Wright stock again dropped.

The plaintiff asserts that the defendants violated the Securities and Exchange Act of 1934 and that as a result of these violations, the market price of Barry Wright common stock was artificially inflated during the proposed class period.[1] Plaintiff

---

1. It should be noted that the plaintiff proposes that the length of the Class Period be from January 5, 1988 through October 20, 1988. Defendants contend, on the other hand, that the Class Period should begin and end on May 10, 1988 because the May 10, 1988 announcement disclosed all the information to the plaintiff.

Contrary to the plaintiff's assertions at the hearing on this motion, the complaint does not allege that the January 5, 1988 announcement was misleading and certainly does not satisfy Rule 9(b) with respect to this announcement. On the other hand, the defendants' argument with respect to this issue delves the Court too

asserts that he and other members of the proposed class, in ignorance of the misleading and deceptive nature of the representations made by the defendants, relied, to their damage, on the integrity of the market. The plaintiff also asserts state law claims of fraud and negligent misrepresentation.

## II. *Standing*

Defendants assert that plaintiff lacks the standing necessary to maintain a claim for actions occurring after July 14, 1988, the date the named plaintiff made his last purchase of Barry Wright stock. Plaintiff contends that because the May and August disclosures constitute a "common course of conduct," he has standing to assert claims based on the August 2 announcement on behalf of the class.

A court must assess standing to sue based upon the standing of the named plaintiff and not upon the standing of unidentified class members. *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197, 2207, 45 L.Ed.2d 343 (1975). Mr. Adair's standing, therefore, must be based upon the injury suffered by Mr. Adair, not any injury suffered by unidentified class members, and the Court must limit the claim accordingly. If the Mr. Adair lacks individual standing to maintain an action based on the August 2, 1988 announcement, he may not seek relief for this claim on behalf of a class. *See McGrath v. Dept. of Housing and Urban Development*, 722 F.Supp. 902, 906 (D.Mass.1989), *citing Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir.1976).

To maintain a private action for damages under Section 10(b) and Rule 10b–5, plaintiff must be a purchaser or seller of securities and must allege injuries resulting from reliance upon defendants' material misstatements or omissions.[2] *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975).

■ Plaintiff cannot establish that he relied on events which occurred after he purchased his stock. Any injuries sustained by Mr. Adair necessarily resulted from events occurring prior to his last purchase on July 14, 1988.[3] *See, e.g., In re Gen. Motors Class E Stock Buyout Secur. Litigation*, 694 F.Supp. 1119, 1127–1128 (D.Del.1988); *Konstantinakos v. Federal Deposit Ins. Corp.*, 719 F.Supp. 35, 38 (D.Mass.1989); *In re Gen. Motors Class E Stock Buyout Secur. Litigation*, 694 F.Supp. 1119, 1125–1126 (D.Del.1988); *Schwartz v. Novo Industri, A/S*, 658 F.Supp. 795, 800 n. 18 (S.D.N.Y.1987). Thus, plaintiff has standing to assert a claim under Rule 10b–5 arising from events prior to July 14, 1988. He, on the other hand, lacks standing to assert a 10b–5 claim based on the August 2, 1988 announcement and, therefore, cannot represent those class members who purchased after July 14, 1988.

## III. *Class Certification*

A class action may only be certified if, after a "rigorous analysis," the trial court is satisfied that the requirements of Rule 23 have been met. *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). District courts have broad discretion when determining issues of class certification. *Priest v. Zayre Corp.*, 118 F.R.D. 552 (D.Mass.1988). Although suits on be-

---

deeply into the merits of this case. Accordingly, the Court rules that if a class is certified in this case, it will begin on May 10, 1988, when the first allegedly misleading disclosure was made.

**2.** Reliance may be proved, as is the case here, by utilization of the fraud on the market theory. *See Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

**3.** Cases cited by plaintiff in support of plaintiff's "standing" to bring suit are inapposite. These cases address the issue of "typicality" and do not address the plaintiff's "standing." Courts have recognized the "common course of conduct" theory in construing the "typicality" requirement of Rule 23. *See, e.g., In re IGI Secur. Litigation*, 122 F.R.D. 451, 462 (D.N.J.1988); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 556 (D.Mass.1988); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 311–312 (D.Mass.1987).

The issue of standing, however, must be overcome before the Court considers the typicality of claims required by Rule 23. *Gabrielsen v. Banctexas Group, Inc.*, 675 F.Supp. 367 (N.D. Tex.1987).

half of shareholders alleging violations of federal securities laws are prime candidates for class action treatment, éach case must be considered in light of its particular facts to ensure that the plaintiff meets all of the prerequisites of class certification. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978).

Rule 23(a) identifies the following prerequisites to class certification:

(1) the class is so numerous that joinder of all members would be impracticable;

(2) there are questions of law and fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff must also show one of the three alternative requirements of Rule 23(b). Here plaintiff has chosen to show the requirements of Rule 23(b)(3), which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action [be] superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The burden of proving all of the above prerequisites rests entirely on the would-be class representative. *Grace v. Perception Technology, Corp.*, 128 F.R.D. 165, 167 (D.Mass.1989); *Green v. Johnson*, 513 F.Supp. 965, 974 (D.Mass.1981).

### A. The 10b–5 Claim

#### 1. *Numerosity and Common Questions of Law and Fact*

The defendants concede that the plaintiff has met the requirements of numerosity and of common questions of law and fact. I, therefore, rule, without discussion, that the proposed class satisfies the numerosity requirement of Rule 23(a)(1) and that there are common questions of law and fact as required by Rule 23(a)(2).

#### 2. *Rule 23(b)(3)*

The parties do not seriously dispute and I find, without discussion, that the common questions of law or fact predominate over questions affecting individual members of the proposed class and that a class action is superior to other available methods for fair adjudication of the controversy, thus satisfying Rule 23(b)(3).

#### 3. *Typicality*

Analysis under the typicality prerequisite involves a comparison of the claims of the putative plaintiff with the claims of the class. The named plaintiff's claims are typical of the class when the plaintiff's injuries arise from the same events, practice or course of conduct of the defendant as do the injuries which form the basis of the class claims. *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 777 (D.Mass. 1988).

■ Plaintiff asserts a fraud on the market theory. The fraud on the market theory, as applied to a developed securities market, assumes that the market price of stock reflects all available public information, including material misrepresentations. *Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 403 (N.D.Ill.1984).

When a case is brought under a fraud on the market theory, typicality is established by a showing that the putative plaintiff relied on the integrity of the market. *Tolan, supra*, at 778. In such a case, reliance on any public material misrepresentations is presumed. *Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

Thus, plaintiff can meet the typicality requirement of Fed.R.Civ.P. 23 if he relied on the integrity of the market to determine the price and value of the securities in which he traded. *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 168 (D.Mass.1989). Plaintiff's reliance on the advice of his broker in purchasing the stock does not make class certification less appropriate. *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 778 (D.Mass.1988), *citing Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 404–406 (N.D.Ill.

1984). To rebut the presumption of reliance, a defendant must show that the decision to purchase was based on factors "wholly extraneous to the market." *Grossman, supra,* at 406. Absent some evidence showing that the broker's recommendation was based on such factors, it cannot be said that the plaintiff's decision to purchase was divorced from basic reliance on the integrity of the market price of the stock. The defendants have presented no evidence to suggest that the broker relied on factors extraneous to the market. The broker's deposition reveals, on the other hand, that the broker, in fact, relied on the integrity of the market in advising the plaintiff to purchase Barry Wright common stock.[4] Plaintiff, thus, relied on the integrity of the market in purchasing his stock.

### 4. *Adequacy*

Defendants contend that the plaintiff has an inadequate understanding of the allegations in the complaint. Defendants also assert that the plaintiff's credibility is vulnerable to attack.

Under the adequacy of representation requirement of Rule 23(a)(4), the class may be certified if "the representative parties will fairly and adequately protect the interests of the class." "The '[t]wo basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.' " *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir.1985).

Plaintiff is represented by able counsel familiar with and experienced in this type of litigation. The question thus is whether plaintiff's lack of detailed familiarity with the facts underlying the complaint coupled with his purported credibility problems present a potential conflict between the named plaintiff and the class members.

The plaintiff's deposition demonstrates that his personal knowledge of many of the facts pleaded in the complaint is limited.[5] However, a representative

---

**4.** The plaintiff's broker testified that at some point in 1987 or 1988 Barry Wright came to his attention. The broker further testified:

> Q. Did you subsequently do anything to follow Barry Wright?
> A. Yeah, I punched the stock price up and started to follow the activity in the stock.
> Q. When you started to follow the activity in the stock, can you describe what you mean by that?
> A. I would watch the bid and ask, the volume, the trading in the stock.
> Q. Anything else?
> A. If news item came up, I would look at that.
> Q. When you say news item came up, what do you mean by that?
> A. When a stock has a news item on the Quotron machine you're using, a star would appear, which would mean there is news on the company. So, if I was following the stock I would notice a star came up.
>
> . . . . .
>
> A. ... then I would proceed to read the news story on the Quotron machine.
> Q. Did you do anything else to follow the activity in the stock or news items related to the stock?
> A. Yes, I did get a Value–Line on the stock.
> A. A Value–Line is a—a fact sheet on the company produced by a company called Value–Line.

**5.** During the plaintiff's deposition, the following colloquy took place:

> Q. Mr. Adair, why did you determine to file a complaint against Barry Wright?
> A. Largely because of [my broker's] advice. He felt something was wrong.
>
> . . . . .
>
> Q. What did he explain to you what he thought was wrong?
> A. I don't recall all the details; but at the time that he did, it sounded logical to me.
> Q. Can you recall anything that he told you about what was wrong?
> A. I can remember the word "restructuring" as being part of what he thought was wrong.
> Q. Can you recall anything else?
> A. Only that it involved the sale of Wright Line.
> Q. Was there anything else?
> A. I don't think I remember any other details than that, that the relationship of those things he felt as to what he knew was wrong.
>
> . . . . .
>
> Q. What is your understanding of the fraud or what fraud did Barry Wright commit?
>
> . . . . .
>
> A. I believe I understand only that the sale of Wright Line was to be an advantageous thing to the shareholders and that it never happened for reasons that we were not informed of.
> Q. Do you understand sitting here today why it didn't happen?

need not have personal knowledge of all the relevant facts to be an adequate representative. *Grace v. Perception Technology, Corp.*, 128 F.R.D. 165, 171 (D.Mass. 1989); *Priest v. Zayre Corp.*, 118 F.R.D. 552, 556 (D.Mass.1988). The plaintiff appears to understand the basic issues behind the complaint. Moreover, the plaintiff testified that he thoroughly reviewed the complaint before it was filed. *See Grace, supra*, at 171.

■ The Court has also considered the defendants' argument regarding certain "inconsistencies" between the plaintiff's testimony and the broker's testimony and concludes that these "inconsistencies" do not render the plaintiff inadequate. These "inconsistencies" are, in essence, as follows. During his deposition, the plaintiff testified that he relied on his broker's advice, not only in purchasing the stock but also in deciding to file the complaint. Plaintiff testified that his decision to file suit was based on his broker's opinion that there was an unfairness with respect to the "restructuring" plan specifically with regard to the sale of Wright Line.

The broker's testimony reveals, however, that the broker has minimal, if any, recollection of telling the plaintiff that there was an unfairness with respect to the "restructuring." Moreover, the broker recalls that the decision to bring the lawsuit was not prompted by Barry Wright's disclosures but, rather by the broker's observation of an unusually large block of shares being traded in Barry Wright.[6]

As this Court stated in *Tolan, supra*, at 780, "individual recollections of plaintiff[ ] with respect to the particular information [he] relied on and [his] memory of certain events is of minimal import if the plaintiff[ ] [is] able to show that [he] relied on the integrity of the market in making [his] investment decision." The plaintiff clearly relied on the integrity of the market in making his investment decision. He understands the issues behind the complaint, appears dedicated to the vigorous prosecution of the case and is represented by counsel who are qualified to vigorously prosecute the case.

The defendants further contend that plaintiff's use of his Barry Wright stock to

---

A. Not completely.

6. The following is an excerpt from the broker's deposition testimony:

Q. Did you have a discussion with Mr. Adair that prompted you to call the firm of Milberg, Weiss?
A. Either the firm called me or I called the firm, whichever way it happened.
Q. Yes, and that was prompted by a discussion with Mr. Adair?

. . . . .

Q. And, what was the substance of that discussion?
A. I had mentioned to Lincoln that I recalled watching the stock and noticing a large block of stock, the number four hundred thousand is—a number that is—remembered by me at this time, and I saw the stock transaction trade late in the day and I recall that either the subsequent day or the following day after that, there was some type of news item and the stock was down a couple of points from where this large block had traded. And at that time I stated to Lincoln Adair that it seems strange to me to see a transaction of such nature take place. And it seemed odd that such a large block would trade. Prior to some type of news coming which would have taken the stock down substantially in the next couple of trading days.

Q. When you say that it seems strange to see a transaction of such a nature take place, what transaction were you referring to....
A. The large block of stock trading at that price.
Q. Can you explain why it seems strange to see a transaction of that nature?
A. Because I hadn't seen large blocks of stock of that size trade in my recent previous trading watching of the stock, meaning while I was watching the stock prior, I hadn't seen blocks of that nature and it seemed strange to me to see the large block at the end of the day and within a couple days, a substantial drop in the stock.
Q. Was there anything else that you discussed with Lincoln Adair that then led to your calling or being called by Milberg, Weiss?
A. Not that I can recall.
Q. You didn't tell him you thought there was something wrong with the—did you tell him that there—that you thought there was something wrong with the company's disclosures as of the time of the conversation you had with him? That led up to the subsequent call with Milberg, Weiss?
A. I don't recall.
Q. You don't recall one way or the other?
A. I—I don't recall the substance of what—recall any of that substance.

obtain certain tax benefits and his testimony with respect thereto render him inadequate. The Court disagrees. The proposed plaintiff's interests are not antagonistic or in conflict with the class he seeks to represent. Moreover, the Court rules that the plaintiff's credibility will not unduly burden the class, nor will it divert attention from the substance of the class claim. For the reasons outlined above, plaintiff's federal securities claim based on the May 10, 1988 announcement will be certified for class treatment.

### B. Pendent State Claims

■ Plaintiff has presented claims of common law fraud and negligent misrepresentation based upon the same conduct of defendants as the federal claims. Plaintiff seeks to certify these state claims for class treatment.

Courts have split as to the treatment of pendent state claims. The recent trend, however, is toward certification. *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 171 (D.Mass.1989), *citing Priest v. Zayre Corp.*, 118 F.R.D. 552, 557 (D.Mass. 1988). This Court has required that the law of different states either will not apply or will not vary significantly. *Priest, supra,* at 557.

Before a state can apply its law to a class under a choice of law analysis, it must have sufficient contact or aggregation of contacts to the claims asserted by members of the class. *Grace, supra,* at 171. For purposes of certification, plaintiffs have sufficiently convinced the Court that Massachusetts law should apply to the pendent state law claims. Barry Wright has its principal place of business in Massachusetts, defendants are officers and directors of that Company, and the alleged violations occurred in substantial part in Massachusetts. Plaintiff's pendent state claims will be certified for class representation as well.

For the reasons outlined above, it is ORDERED that plaintiff is certified to represent a class consisting of all persons who purchased Barry Wright common stock during the period from May 10, 1988, through July 14, 1988, inclusive, and who sustained damages as a result thereof. Excluded from the Class are the defendants, members of their immediate families, their heirs, successors and assigns, and any subsidiary or affiliate of any defendant.

SO ORDERED.