S. Charles MODELL, et al., Plaintiffs

v.

ELIOT SAVINGS BANK, Christopher S. Wilson, Joseph A. Petrucelli and Denise Caffrey, Defendants.

Civ. A. No. 90–10622–H.

United States District Court, D. Massachusetts.

Oct. 16, 1991.

---

Glen DeValerio, Norman Berman, Berman, DeValerio & Pease, Boston, Mass., Francis J. Farina and Richard D. Chimicles, Greenfield & Chimicles, Haverford, Pa., for plaintiffs.

Susan A. Jackson, Pichette, Reilly & Jackson; Richard G. Pichette, Pichette, Reilly & Jackson, P.C.; John G. Fabiano, Peter A. Spaeth, Hale & Dorr; Sarah Chapin Columbia, Mark A. Michelson, Choate, Hall & Stewart; John D. Hughes, A. James Kobe, Hutchins & Wheeler; Bryan G. Killian, Sherin & Lodgen, Boston, Mass.; Michael F. Coyne, Richard A. Cirillo, Rogers & Wells, New York City; Don M. Kennedy, Goodwin, Procter & Hoar; David J. Officer, Posternak, Blankstein & Lund; Gary R. Greenberg, Goldstein & Manello; and John Howard Henn and Brandon F. White, Foley, Hoag & Eliot, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

### HARRINGTON, District Judge.

The Plaintiffs S. Charles Modell and Charles J. Steingold were purchasers of shares of the Defendant Eliot Savings Bank ("Eliot" or "Bank"), either pursuant to an initial public offering, made on July 22, 1987, or on the open market. The plaintiffs allege that the Bank, through certain named officers, directors, and senior managers (the "Individual Defendants"), issued an Offering Circular and various public statements, financial reports, and reports to shareholders, which were materially false and misleading and/or omitted to state material facts regarding the Bank's loan practices, financial condition, and projected profitability. According to the plaintiffs, these acts were calculated to manipulate the market price of the Bank's stock and induced investors to purchase such stock at an artificially inflated market price. As a result of the defendants' actions, the plaintiffs assert that they suffered substantial losses when the Bank's true financial condition was disclosed.

The plaintiffs filed suit against the Bank and the individual defendants charging violations of both the federal securities law and the state common law. The case is now before this Court on the Plaintiffs' Motion for Class Certification. Specifically, the plaintiffs request this Court to certify the class as follows:

All purchasers of Eliot Savings Bank shares on the open market during the period of July 22, 1987 through and including April 4, 1990, but excluding the defendants, the executive officers and members of the Boards of Directors of Eliot Savings Bank and Eliot Properties, Inc., and members of their immediate families.

## DISCUSSION

Before this Court may certify a class, it must undertake a "rigorous analysis" of the particular facts of this case to ensure that the plaintiffs have met all of the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Specifically, Rule 23(a) identifies the following prerequisites to class certification:

(1) the class is so numerous that joinder of all members would be impracticable;

(2) there are questions of law and fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, this Court must find that "the questions of law or fact common to the members of the class predominate over any

questions affecting only individual members and that a class action is superior to other methods for adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The burden of proving all of the above prerequisites rests entirely on the would-be class representatives. *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 167 (D.Mass. 1989).

At the outset, this Court notes that certain of the requirements of Rule 23 are not at issue in this case. The defendants do not contest that the plaintiffs have satisfied the requirements of "numerosity" and "commonality" under 23(a)(1) and (a)(2). In addition, this Court rules, without discussion, that the plaintiffs have made a sufficient showing under Rule 23(b)(3) to satisfy the requirements of that subsection as well. Thus, the only class certification issues to be resolved by this Court relate to the "typicality" and "adequacy of representation" requirements of subsections (a)(3) and (a)(4). Before this Court can address these remaining certification issues, however, it must answer a threshold question: Do each of the named plaintiffs have *standing* to assert the claims for which the class seeks to recover?

## A. *Standing*

■ When the issue of standing is raised by a party, this Court must resolve that issue *before* considering the class certification requirements of Rule 23. *In re Bank of Boston Corp. Securities Litigation*, 762 F.Supp. 1525, 1531 (D.Mass.1991); *Adair v. Sorenson*, 134 F.R.D. 13, 16 n. 3 (D.Mass.1991). The mere fact that the plaintiffs have brought this suit as a class action will not allow them to circumvent the threshold requirement of standing. *In re Bank of Boston*, 762 F.Supp. at 1531. Indeed, strict standing requirements are particularly important in the area of securities litigation, in order to curb the risks of vexatious litigation and abuse of discovery.

*Id.; See also Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739–741, 95 S.Ct. 1917, 1927–28, 44 L.Ed.2d 539 (1975).

■ In this case the defendants have challenged the standing of both of the named plaintiffs. Specifically, the defendants assert that each plaintiff has only "limited" standing, i.e. Plaintiff Modell can represent only those shareholders who purchased their Eliot stock during the Initial Public Offering on July 22, 1987,[1] and Plaintiff Steingold cannot represent those shareholders who purchased or sold their Eliot stock on the open market after the date of Steingold's last purchase, May 19, 1989.[2] The defendants rely on this Court's decisions in *Adair v. Sorenson*, 134 F.R.D. 13, and *In re Bank of Boston Securities Litigation*, 762 F.Supp. 1525, in support of their position.

In *Adair*, this Court noted that in order to maintain a private action for damages under Section 10(b) and Rule 10b–5, the plaintiff must be a purchaser or seller of securities and must allege injuries resulting from reliance upon the defendants material misstatements or omissions. *Adair v. Sorenson*, 134 F.R.D. at 16. Thus, a Section 10(b) plaintiff had standing to challenge only those alleged misrepresentations upon which he reasonably relied in purchasing or selling his stock. *In re Bank of Boston*, 762 F.Supp. at 1532. Following the logic of these decisions, the defendants assert that each named plaintiff has standing to challenge only those events occurring *prior* to the date of his last purchase or sale because it would be impossible for them to have been misled by events occurring *after* such time. *Id.; see also Adair v. Sorenson*, 134 F.R.D. at 16.

The plaintiffs maintain that the named class representatives have standing to represent the unnamed purchasers and sellers of Eliot stock throughout the entire proposed class period. To that end, they urge

---

1. The only purchase which Modell made during the proposed class period was pursuant to the July 22, 1987 Initial Public Offering. At that time Modell purchased 250 shares of Eliot stock.

2. Specifically, Steingold purchased 2,000 shares of Eliot stock on April 26, 1989, and 8,000 shares the following day, April 27, 1989. On May 19, 1989, Steingold purchased an additional 10,000 shares—his last purchase during the proposed class period.

this Court to follow its holding in *Opiela v. Bruck*, 139 F.R.D. 257 (D.Mass.1990). In *Opiela*, this Court held that where a continuing course of conduct on the part of the defendants formed the basis of recovery for all class members, a named class member could represent those who purchased both before and after the named representative. *Opiela v. Bruck*, at 260. The plaintiffs assert that the various statements and representations made by the Bank between July 22, 1987 and April 4, 1990 form a "continuing course of conduct" thus rendering *Opiela* applicable to the case at bar.

After carefully weighing the arguments of both sides and applying them to the facts of this case, this Court concludes that the principles enunciated in *Adair* and *In re Bank of Boston* are controlling here. The plaintiffs' "continuing course of conduct" theory is inapplicable to this issue for two reasons. First, as this Court noted in *Adair*, this theory has been used by the courts in construing the "typicality" requirement of Rule 23(a)(3), and has not been, nor should it be, used to evaluate the question of a plaintiffs' standing. *Adair v. Sorenson*, 134 F.R.D. at 16 n. 3; *cf. Priest v. Zayre Corp.*, 118 F.R.D. 552, 557 (D.Mass.1988), *quoting In re Elscint, Ltd. Securities Litigation*, 674 F.Supp. 374, (D.Mass.1987) ("With respect to typicality under Rule 23(a)(3), plaintiffs ... need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members.").

Secondly, based upon the record before it, this Court does not find that the actions of the defendants constituted a continuing course of conduct lasting throughout the proposed class period. The plaintiffs have represented that during the period running from the Initial Public Offering on July 22, 1987 until May 19, 1989, the various statements and representations made by the Bank all basically presented a positive financial picture regarding the Bank and its dealings. On May 19, 1989, however, the Bank announced that it expected an operating loss not only for the second quarter of 1989 but for *all* of 1989, due to the deterioration in the commercial real estate market. By plaintiffs' own admission this announcement "stunned" investors and the price of the Bank's stock dropped 33⅓% in that one day. Thereafter, the news flowing from the Bank could generally be described as bad.[3] Clearly the May 19th announcement would put future investors on notice that things were not well with the Bank. The idea that post-May 19th investors would continue to rely on the Bank's earlier representations, therefore, does not seem plausible. Thus, any continuing course of conduct which began on July 22, 1987 ended, for all practical purposes, on May 19, 1989.

This Court reaffirms its decisions in *Adair* and *In re Bank of Boston*, viz. that plaintiffs in a Section 10(b) action only have standing to challenge those events occurring *prior* to their last date of purchase or sale. Thus, Plaintiff Modell has standing to represent only the initial offering purchasers while Plaintiff Steingold has standing to represent only those investors who purchased or sold Eliot stock up to and including May 19, 1989, the date of his last purchase.[4] Because Plaintiff Steingold did not make any stock purchases in connection with the Initial Public Offering, however, he cannot properly be viewed as a

---

3. On June 14, 1989 Eliot announced the resignation of the Defendant Wilson from his position as Chairman and Chief Executive Officer and that Defendant Petrucelli would assume the duties of CEO. On July 20, 1989, Eliot reported a second quarter loss of $15.9 million. Subsequently on October 20, 1989, Eliot announced its results for the third quarter of 1989, reflecting a net loss of $4.8 million. Finally on December 29, 1989, Eliot announced that it had agreed to a regulatory order that imposed stringent financial restrictions on the Bank. This order was reportedly imposed as the result of a regulatory examination and required the Bank to, among other things, maintain adequate reserves for loan losses and to improve its lending operations. The Bank failed on April 4, 1990 and was placed in receivership by the F.D.I.C. on June 29, 1990.

4. As a practical matter this will have no effect in terms of limiting the class size because, based on the discussion above, this Court holds that the class period ends on May 19, 1989.

member of that particular class. *See Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). Thus, his standing is confined to representing only those who purchased Eliot stock *on the open market* up to and including May 19, 1989. For this reason, this Court determines that, provided that the named class representatives meet the two remaining requirements of Rule 23, the proposed class should be split into two classes—the Initial Public Offering Class ("IPO Class") and the Open Market Class.

### B. *Typicality*

▮ Rule 23(a)(3) requires that the claims and defenses of the class representatives be typical of the claims and defenses of the class. ·The claims of the class representative are considered typical when the plaintiff's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims, *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 777 (D.Mass.1988), and when the plaintiff's claims are based on the same legal theory, *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981). If a plaintiff may be subject to unique defenses that would divert attention from the common claims of the class, a representative may be considered atypical of the class. *Grace v. Perception Technology Corp.*, 128 F.R.D. at 169.

▮ The defendants challenge the typicality only of Plaintiff Modell, conceding the typicality of Plaintiff Steingold. Specifically, they assert that he will be subject to unique reliance defenses on several grounds. First, the defendants' note that Modell was a former employee of Merrill Lynch (the principal underwriter of the Initial Public Offering) and that his stockbroker was employed by Merrill Lynch at the time of the offering. Thus the defendants contend that Modell acquired inside information regarding the initial offering of Eli-

ot stock. As a result the defendants argue that Modell relied on information that was different from that available to other initial offering purchasers, thereby making him an improper class representative. *See Grace v. Perception Technology Corp.*, 128 F.R.D. at 168–169.

In addition, the defendants state that, as a former stockbroker himself, Modell has acquired the status of a highly sophisticated investor. As such, his reliance on the defendants' allegedly misleading statements would be subject to defenses not available against less-skilled investors. *See, e.g., Priest v. Zayre*, 118 F.R.D. at 555. Finally, the defendants assert that Modell relied on information provided by his stockbroker rather than by the defendants themselves. In particular, the defendants make much of the fact that, during his deposition, Modell stated that he did not receive the Offering Circular until after making his stock purchase. Thus, the defendants claim that Modell will be unable to demonstrate the requisite reliance needed to maintain a Section 10(b) action.[5]

This Court finds these arguments to be without merit. The record fails to indicate that Modell acquired any inside information either directly or through his broker. Additionally, Modell's status as a sophisticated investor renders him neither devoid of the protection of the securities laws nor immune to injury by misrepresentation. *Priest v. Zayre Corp.*, 118 F.R.D. at 555.

The fact that Modell obtained his information from his broker rather than the Bank itself, likewise does not affect his typicality. As this Court has said before, "[p]laintiff's reliance on the advice of his broker in purchasing the stock does not make class certification less appropriate." *Tolan v. Computervision*, 696 F.Supp. at 778, *citing Grossman v. Waste Management, Inc.*, 589 F.Supp. 395, 404–406 (N.D.Ill.1984).

---

**5.** The defendants also attacked Modell's typicality on the grounds that the Initial Offering Purchasers could not claim reliance based on a fraud-on-the-market theory. This would, the defendants' asserted, leave Modell open to unique reliance defenses not applicable to the Open Market Purchasers. Because this Court has determined that it is necessary to split the proposed class into two classes due to standing considerations, *see* section A, *supra*, this Court need not address this argument.

Modell stated in his deposition that his broker read information to him regarding the offering from a so-called "highlight sheet." The fact that the broker did not relay information directly from the Offering Circular itself but instead used the "highlight sheet" is of no consequence. The use of such secondary sources which merely pass along the misstated information, ultimately contained in the Offering Circular, will not destroy typicality. *See In re Data Access Systems Securities Litigation*, 103 F.R.D. 130 (D.N.J.1984); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 307 (D.Mass.1987). Indeed, the Offering Circular had not even been released to the public prior to the time of the Initial Public Offering. Thus, the *only* way for investors to learn of the Bank's financial condition at this time was through their brokers. In this respect Modell is absolutely typical of all other initial offering purchasers and he therefore satisfies the typicality requirement of Rule 23(a)(3).

### C. *Adequacy of Representation*

■ The defendants' adequacy challenge is levelled solely against the Plaintiff Steingold. Under the adequacy of representation requirement of Rule 23(a)(4), the class may be certified if the representative parties will fairly and adequately protect the interests of the class. "The '[t]wo basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) are: (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.' " *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

It is undisputed, that the plaintiff is represented by able counsel familiar with and experienced in this type of litigation. The defendants' contend, however, that Stein-

gold lacks any familiarity with, or understanding of, either the substantive Complaint or his duties as a class representative. It is their position that he is, in effect, nothing more than a "puppet representative," who is being used by his attorneys to stage a class action against the defendants. This situation, the defendants assert, places Steingold in a potential conflict with unnamed class members.[6]

After reviewing the facts of this case, this Court is convinced that Plaintiff Steingold is an adequate representative of his class. It is important to note that it was Steingold who first sought out legal representation on this matter, after conducting considerable inquiry on his own. He was not simply "dredged up" by his attorneys. Furthermore, Steingold bought some 20,-000 shares of Eliot stock and has therefore suffered a serious financial loss. He thus has a compelling personal interest to prosecute this case vigorously on behalf of his class.

The mere fact that Steingold was not familiar with the specifics of the Complaint should not defeat his representative status. "That [the Plaintiffs] have not learned the specifics of the law (and some rather complicated laws are at issue here) does not indicate at all that they cannot adequately represent their fellow class members." *Coe, et al. v. National Safety Associates, Inc.*, 134 F.R.D. 235, 239 (N.D.Ill.1991), *vacated on reconsideration*, 137 F.R.D. 252 (N.D.Ill.1991). Therefore, this Court finds that Plaintiff Steingold will adequately represent the class of Open Market Purchasers.

### D. *Pendant State Claims*

■ The defendants' final contention is that the pendant state claims brought by the plaintiffs should not be certified for class treatment. As this Court has repeatedly said, it will certify pendant state claims so long as the law of different

---

**6.** The defendants also assert that Steingold is in failing health and is therefore unable to carry out his duties as a class representative. Absent any proof that his stroke has left him too impaired to prosecute this action, this Court is unwilling to deny him the opportunity to serve as a class representative. *See Gorsey v. I.M. Simon & Co., Inc.*, 121 F.R.D. 135, 139–140 (D.Mass.1988). For now, this Court is satisfied that Steingold is and will continue to be healthy enough to carry on this action.

**24**

states either will not apply or will not vary significantly. *In re Bank of Boston,* 762 F.Supp. at 1535; *Adair v. Sorenson,* 134 F.R.D. at 20. There appears to be no dispute between the parties that Massachusetts law will apply. The defendants assert, however, that because Massachusetts does not recognize the fraud-on-the-market theory for claims of common law fraud or negligent misrepresentation, such claims are inappropriate for class treatment. To make such a determination would bring this Court too close to addressing the merits of this case, which it cannot do at this stage. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Thus, plaintiffs pendant state claims will be certified for class representation as well.

CONCLUSION

Based on the foregoing discussion, this Court hereby orders as follows:

(1) This action shall be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

(2) Plaintiff S. Charles Modell shall be certified to represent the Initial Public Offering Class, consisting of all purchasers of Eliot Savings Bank stock pursuant to the Initial Public Offering of July 22, 1987, and who sustained damages as a result thereof.

(3) Plaintiff Charles J. Steingold shall be certified to represent the Open Market Class, consisting of all purchasers of Eliot Savings Bank stock on the open market from July 22, 1987 through May 19, 1989, inclusive, and who sustained damages as a result thereof.

(4) Excluded from both classes are the defendants, the executive officers and members of the Boards of Directors of Eliot Savings Bank and Eliot Properties, Inc. and members of their immediate families.

SO ORDERED.