**In the Matter of SKINNER GROUP, INC., et al., Debtors.**

**Bankruptcy No. N96–11349–WHD through N96–11380.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Feb. 10, 1997.

Alfred S. Lurey, Dennis S. Meir, C. Ray Mullins, Kilparick & Cody, Atlanta, GA, for Debtors.

Gus H. Small, Small, White & Marani, Atlanta, GA, for Objecting Claimants.

Vivian D. Vines, Edmond & Vines, Birmingham, AL, for Settlement Class.

## ORDER

W. HOMER DRAKE, JR., Bankruptcy Judge.

Now before the Court in this proceeding is the Motion for Orders (i) Making Federal Rule of Bankruptcy Procedure 7023 Applicable, (ii) Certifying Settlement Class and Sub-Classes, (iii) Granting Preliminary Approval of Class Settlement, (iv) Establishing Deadline for Opting Out of Class Settlement, (v) Setting Bar Date for Filing Proofs of Claim, and (vi) Approving the Form and Procedure for Providing Notice, as filed by Skinner Group, Inc., Skinner Corporation, and their respective subsidiaries (hereinafter collectively "the Debtors"). Having found the issues raised herein to generate a core proceeding, see 28 U.S.C. § 157(b)(2)(A) & (O), and having afforded all parties in interest an opportunity to be heard in the course of a January 30, 1997 hearing, the Court now shall dispose of the Debtors' Motion in accordance with the following reasoning.

### FACTUAL BACKGROUND

The Debtors have, for many years, owned a chain of furniture stores within the Southeastern United States, the operation of which involves both cash sales and in-store financing. Though profitable as a general matter, the Debtors' operations recently have become overwhelmed by litigation, with individual and class action plaintiffs filing consumer actions against the Debtors in both state and federal court.[1] Thus, on May 10, 1996, the

---

1. Over the past several years, certain of the Debtors have been named as defendants in numerous actions asserting claims for alleged violations of state and federal law, and other allegedly wrongful acts or omissions, relating to the offer, sale or purchase of UCC–1 non-filing insurance ("NFI"), credit property insurance, credit life insurance, credit unemployment insurance and credit disability insurance (hereinafter collectively "Credit Insurance") in connection with the sale of household goods.

Prior to the petition date, Skinner Corporation was named as one of the defendants in a putative class action in the United States District Court, Middle District of Alabama, Northern Division, styled *Princess Nobels, et al. v. Associates Corporation of America, et al.,* Civil Action No. 94–T–

Debtors filed for Chapter 11 protection so as to resolve the litigation claims against them in a consolidated fashion.

The instant Motion lays the groundwork for such an omnibus settlement of all previously unasserted causes of action that consumers might hold against the Debtors, arising either from the sale of credit-life and disability insurance or the assessment of UCC–1 non-filing insurance charges. A pre-negotiated Settlement Agreement contemplates the certification of two settlement subclasses, representing each of those respective litigation groups, but specifically excluding any claimants already named as parties in litigation. For parties not so excluded and not opting out of the settlement class, the Agreement proposes to set up a $1.5 million settlement fund to be distributed pro rata, after the payment of up to thirty percent in attorney's fees to the counsel for the class of tort claimants. The claims of excluded parties, i.e., those · already suing in their own name, also are made a subject of contingency by the Settlement Agreement, in that the Agreement predicates itself upon the settlement of all such excluded claims for a sum not to exceed $150,000.[2] As such, through the combined effect of the Agreement's direct and indirect terms, the Debtors seek to remove all threat of litigation from some 200,000 consumers by giving each such aggrieved party a small, but certain, sum in satisfaction of their claim.

Framed against the backdrop of these provisions from the Settlement Agreement, the several components of the Debtors' Motion came before the Court in a January 30, 1997

699–N. In the *Nobels* case, it was alleged that the defendants, in connection with the offer and sale of NFI, engaged in wrongful acts and omissions to the detriment of class members, including, inter alia, (i) violating laws prohibiting unreasonable restraints on interstate trade and commerce in the United States, in violation of 15 U.S.C. §§ 1, 2, and 14; (ii) violating the Truth in Lending Act, 15 U.S.C. §§ 1601, et seq., and Federal Reserve Board Regulation Z, 12 CFR § 226; (iii) engaging in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1); (iv) defrauding customers by making material misrepresentations, concealments or omissions relating to NFI premiums; (v) breaching their contracts with customers by failing or refusing to obtain true NFI; and (vi) converting funds and other property of its customers and wrongfully diverting and keeping the proceeds thereof, all as more particularly set forth in Plaintiffs' Amended and Recast Complaint and Petition for Class Action Certification dated March 8, 1995, filed in the *Nobels* case. Upon the filing of the Chapter 11 Cases, the District Judge dismissed Skinner Corporation from the *Nobels* case.

As of the petition date, a request was pending to add Skinner Corporation as a defendant in another putative class action pending in the United States District Court, Middle District of Alabama, Northern Division, styled *Dorothy McCurdy, et al. v. American General Finance, Inc., et al.,* Civil Action No. CV–95–PT–1258–S. In the *McCurdy* case, it was alleged that the defendants, in connection with the offer and sale of credit property insurance, inter alia, (i) defrauded customers by misrepresenting and suppressing material facts, and (ii) made excessive finance charges in violation of state laws, all as more particularly set forth in the First Amended and Substitute Complaint filed in the *McCurdy* case.

Upon the filing of the Chapter 11 cases, the District Court decided that Skinner Corporation would not be a party in the *McCurdy* case.

Two additional putative class actions were pending against various of the Debtors as of the petition date. In the first of these cases, *Hurt, Moody & Butler v. Skinner Corporation, et al.,* Case No. 94–1789, consumer claims were asserted on behalf of a putative class against Skinner Corporation, Skinner's Furniture Store of Montgomery, Inc., Skinner's Furniture Store of Tallassee, Inc., and Skinner's Furniture Store of Tuskegee, Inc. The *Hurt* case originally was filed in state court in Montgomery, Alabama, but had been removed to the United States District Court for the Middle District of Alabama as of the petition date. The second case, *Zona Shockley, et al. v. Skinner Furniture Store of Elba, Inc.,* Civil Action No. CV–96–H–30 ("Shockley"), was pending, as of the petition date, against Skinner's Furniture Store of Elba, Inc., Skinner's Furniture Store of Troy, Inc., and Skinner's Furniture Stores, Inc. The Shockley case was filed in the Circuit Court for Coffee County, Alabama, and asserted consumer claims against the defendants on behalf of a putative class.

Also, as of the petition date, more than fifty actions involving over one hundred plaintiffs were pending against Skinner Corporation and other Debtors in various state courts in Alabama, in which consumer claims were asserted against the defendants, including the case styled as *Patricia Ann Huffman v. Skinner Corporation, et al.,* Civil Action No. CV–96–81 (Circuit Court for Macon County, Alabama).

**2.** At or before confirmation, a Court Order also must be entered discharging the excluded claims to the extent that they are not so resolved by agreement.

hearing. Counsel for a group of excluded claimants, known familiarly as "the Macon County Plaintiffs," [3] then presented several bases of objection to the relief sought by the Debtors. Among their contentions, these objecting creditors submitted that they had no intention of settling for $150,000, as mandated by the Agreement's contingency provision. Thus, they reasoned, it would be futile either to certify the settlement class, as requested, or to approve the terms of settlement under consideration. Regarding the preliminary nature of the approval sought by the Debtors, the Macon County Plaintiffs also questioned the need for any such advance determination, suggesting instead that one final determination of both the class' certification and the settlement's approval would be more appropriate at the time of confirmation. Having afforded both the Macon County Plaintiffs and the Debtors an opportunity to address these matters fully, the Court took disposition of the Debtors' Motion under advisement for further consideration.

---

3. The Macon County Plaintiffs are: Zona Shockley; Annie Dawson; Betty Dubose; Juanita Penn; Beatrice Henderson; Margaret Mahone; Timothy Ginyard; Erma J. Echols; Dive Baskin; Larry Robbins; Diane Johnson; Kenneth Baskin; Alean Henderson; Ida Mae Moore; Loretta Rogers; Cynthia Thomas; Mary L. Smith; Jacqueline Allen; Albert Hampton; Ronald Irvin Hooks; Louise Cooks; Felicia Smith; Gennie Washington; Elizabeth Hazzard; Linda Julian; Sylondia Evette Hooks; Margaret Taylor; Joann Smith; Shirley D. Townsend; Dorothy Smith; Lena M. Siler; Senetta Stanley; Hazel Pritchett; Lucille Marable; Candy Youngblood; Edna Hazzard; Dorothy M. McNabb; Valarie A. Hooks; Priscilla Thompkins; Tanya Derico; Diane Cooks; Mary Allen; Earnest Rudoph; Shirley Moore; Nancy Ligon; Barbara Tarver; Judy A. Smith; Mildred A. McClaney; Michele Lynn Fisher; Irvin Hooks; Mary Dickerson; Mary Tarver; Nathaniel Levett; Mattie Sistrunk; Louise G. Freeman; Robert Washington; Eddie Jean Fitzpatrick; Gertrude Johnson; Carolyn Ousley; Velma Baldwin; Sallie Roe; Mary Washington; Mary Parker; Sylvia Jenkins; Lori Dee; Dianne Penn Pritchett; Bennie Johnson; Evelyn Jenkins Hooks; Francine Tolliver; Beulah Campbell; Ralph Johnson; Marion Smith; Jimmie Mahone; Ernestine Brown; Susie Washington; Mayola Shelly; Lucille Jenkins Fisher; Lizzie Washington; Jessie M. Lewis; Effie Mae Baskin; Martha Fitchard; Maggie Delbridge; Betty Smith; Bessie Caldwell; Sarah Lee Shell; Bessie Cooper; Louise Harrington; Ola Mae Harris; Nettie Cooper; Eva Lou Blue Williams;

**DISCUSSION**

## I. Federal Rule of Civil Procedure 23 in General Overview.

As composed, Federal Rule of Civil Procedure 23 breaks down into two essential components.[4] First, subsection (a) presents a series of uniform requirements which every class action must meet. *See* FED.R.CIV.P. 23(a). Second, the various provisions of subsections (b)(1), (b)(2), and (b)(3) set forth the criteria for three distinct types of class action. *See* FED.R.CIV.P. 23(b). In order to receive "certification," or court approval to go forward, each class action must satisfy the general requirements of subsection (a), and it also must be shown to fall within one of the categories of action licensed by subsection (b). *See id.; see also Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 624 (3d Cir.1996) (citing *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 248 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1995)).

As its uniform standard for all class actions, Rule 23(a) states that no class action

---

Mattie Rodgers; Elvis Cromwell; Classie Holmes; Charlotte Austin; Linda A. Holmes; Doshie Mae Owens; Rosetta Johnson; Elaine Dickerson; Ann Johnson; Willie Ruth Johnson; Mary Cox; Dianne Franklin Harvey; Mary Harris; James E. Smith; Mary E. Mooney; Angela Henry; Glenda McFerrin; Annie Johnson; Marilyn Henry; Louise Lassiter; Calvin Pritchett; Queen Campbell; and Barbara Jackson. As parties who already have commenced litigation in their own names, the "Macon County Plaintiffs" are specifically excluded from the settlement class. Nonetheless, as the subject of a $150,000 settlement contingency under the omnibus Agreement, these individuals will play an important role in the success or failure of the broader class settlement.

4. Federal Rule of Bankruptcy Procedure 7023 serves to incorporate the class actions standards set forth by Federal Rule of Civil Procedure 23. *See* FED.R.BANKR.P. 7023. Although normally applicable only to adversary proceedings, Rule 7023 may be employed at the discretion of the Court. *See* FED.R.BANKR.P. 9014 ("[t]he court may at any stage in a particular matter direct that one or more of the rules in part VII shall apply"). The Court having found Federal Rule of Civil Procedure 23 to provide clear governance over class-wide actions of the type presently before it, Rule 7023 shall be made applicable to this proceeding.

may proceed unless four basic criteria have been satisfied—numerosity, commonality, typicality, and representativeness.[5] "Numerosity" speaks to the practicability of joining all members in the litigation in lieu of implementing the class action procedure. *See* FED.R.CIV.P. 23(a)(1). It frequently is said that attending circumstances dictate the existence of "numerosity," rather than the mere satisfaction of some arbitrarily numeric formulae. *See, e.g., Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980); *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993) (considering the totality of facts when applying Rule 23(a)(1)). Thus, as the Rule itself suggests, the "numerous" character of any action turns upon concepts of general unwieldiness, not size alone. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) (movant need only show that joinder of prospective members would cause inconvenience); *Kelley v. Norfolk & W. Ry. Co.,* 584 F.2d 34, 35–36 (4th Cir.1978) (courts must focus on both qualitative and quantitative considerations).

▮ "Commonality," on the other hand, looks to the degree of overlap between the claims of various class members. *See* FED. R.CIV.P. 23(a)(2). Virtual identity need not exist between claimants in order for the commonality prong to be satisfied, *see Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.1985), *cert. denied* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Weiss v. York Hosp.,* 745 F.2d 786, 809 (3d Cir.1984), *cert. denied,* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985), and courts generally have employed a flexible reading of Rule 23(a)(2). *See, e.g., Eisen v. Carlisle &*

*Jacquelin* 391 F.2d 555, 563 (2d Cir.1968), *rev'd on other grounds,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Goldwater v. Alston & Bird,* 116 F.R.D. 342, 347 (D.Ill. 1987). Nevertheless, the movant for certification must adduce more than one issue of fact or law that the prospective claimants share between themselves before a class may be certified. 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1763 (2d ed. 1986) ("the use of the plural 'questions' suggests that more than one issue of law or fact must be common").

▮ In a similar fashion,[6] Rule 23(a)'s "typicality" requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Flanagan v. Ahearn (In re Asbestos Litigation),* 90 F.3d 963, 976 (5th Cir.1996) (citing *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir.1986)). Thus, shortcomings in typicality will preclude certification when the representative litigant has a claim against a defendant unrelated to the party against whom the class members seek recovery, or when he seeks to recover on a legal theory unlike that relied upon by the class. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *La Mar v. H & B Novelty & Loan Co.* 489 F.2d 461, 465 (9th Cir.1973).

▮ Finally, Rule 23(a) requires that the representative parties "fairly and accurately protect the interests of the class." *See* FED.R.CIV.P. 23(a)(4). The adequacy of rep-

---

5. A fifth uniform requirement, not specifically set forth in Rule 23(a), relates to the adequacy of the class definition. Any litigant proposing to sue on behalf of a class must submit a class definition which makes the members sufficiently identifiable. *Simer v. Rios,* 661 F.2d 655, 668–73 (7th Cir.1981); *Yaffe v. Powers* 454 F.2d 1362, 1367 (1st Cir.1972); *Robertson v. NBA,* 389 F.Supp. 867, 896–97 (S.D.N.Y.1975).

6. Several leading authorities have suggested that the typicality and commonality requirements merge in application, leading to an unnecessarily duplicative analysis. *See Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 632 (3d Cir.1996) (citing 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER &

MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1764 (2d ed.1986)). Notwithstanding the obvious similarities between the two standards, however, it must be recognized that the atypical character of a representative's claim vis-a-vis that of other members well might block certification of actions, despite the possible existence of numerous common questions. *See, e.g., Machella v. Cardenas,* 653 F.2d 923 (5th Cir.1981) (certification denied, although "commonality" existed, since the class representative had brought suit under a differing legal theory). Thus, the typicality requirement of Rule 23(b)(3) serves a vital role in excess of subsection (b)(2)'s practical boundaries.

resentation inquiry has two components designed to ensure that absentees' interests are fully insured.[7] First, the interests of the named plaintiffs must be sufficiently aligned with those of the absentees. *Reed v. Bowen,* 849 F.2d 1307, 1313 (10th Cir.1988); *Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019, 1024 (5th Cir.1983); *Modell v. Eliot Sav. Bank,* 139 F.R.D. 17, 23 (D.Mass. 1991).[8] Second, class counsel must be qualified and must serve the interests of the entire class. *See Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1022 (11th Cir.1996); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir. 1996) ("[a]dequacy of representation" means that the class representative shares the interests of the unnamed members and that he will vigorously prosecute those concerns through qualified counsel).

 Beyond these four general standards of Rule 23(a), each class suit also must meet the criteria for one of three class action types listed respectively in subsections (b)(1), (b)(2), and (b)(3) of Rule 23.[9] Since the parties to this case have stated an intention to proceed under the third action type, known simply as the "(b)(3)" action, that additional burden will require them to show that common questions of law or fact predominate over any questions affecting only individual members and that a class action will be superior to other methods for the fair and efficient resolution of the matter. *See* FED.R.CIV.P. 23(b)(3); *see also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1196–97 (6th Cir.1988); *In re N.D. Cal. Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 856 (9th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983). While "predominance" merely introduces a more stringent variation of Rule 23(a)(2)'s commonality requirement, *see In re Potash Antitrust Litig.,* 159 F.R.D. 682, 693 (D.Minn.1995); *In re Copley Pharmaceutical, Inc.,* 158 F.R.D. 485, 491 (D.Wyo.1994), "superiority" implicates an entirely new series of considerations, including the interest of the members in pursuing individual actions, the extent and nature of any actions already commenced, the desirability of concentrating the litigation, and perceived difficulties in managing the class action format. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir.1990); *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 473 (5th Cir.1986); *Mertens v. Abbott Labs,* 99 F.R.D. 38, 40–41 (D.N.H.1983).

## II. Settling Class Actions Under Rule 23.

 While the parties to a civil action normally do not require a judge's approval to settle the action, class action parties do. *In re Gen. Motors Corp. Pick–Up Truck Fuel*

---

7. This requirement stems from the basic principle that an individual not be bound by an in personam judgment from litigation in which he was not served with due process, unless his interests have been adequately represented by some proxy. *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

8. This component includes an inquiry into potential conflicts among various members of the class, since a named plaintiff cannot be said to align with a class that is itself plagued by internal conflict. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prod. Liability Litigation,* 55 F.3d 768, 800–01 (3d Cir.1995).

9. Rule 23(b) provides, in pertinent part—
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) the prosecution of separate actions by or against individual members of the class would create a risk of
(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy

\* \* \* \* \* \*

FED.R.CIV.P. 23(b).

*Tank Prod. Liab. Litig.*, 55 F.3d 768, 800–01 (3d Cir.1995). As Rule 23(e) provides: "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." FED.R.CIV.P. 23(e). In essence, this rule requires a court to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *See* 2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41, at 11–88 to 11–89 (3d ed.1992). Under Rule 23(e) the Court "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983); *Sala v. National RR Passenger Corp.*, 721 F.Supp. 80 (E.D.Pa.1989); *see also Piambino v. Bailey*, 610 F.2d 1306 (5th Cir.), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980). For this reason, "the court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Id.*

 Nine factors are said to assist the Court in its decision to approve a settlement as fair, reasonable, and adequate under Rule 23(e). *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.1975). Specifically, the Court should take into account: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class

action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Id.; City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974). The proponents of the settlement bear the burden of proving that these factors weigh in favor of approval. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1126 n. 30 (7th Cir.1979); *Holden v. Burlington Northern, Inc.*, 665 F.Supp. 1398, 1407 (D.Minn.1987); *see also* MANUAL FOR COMPLEX LITIGATION § 30.44 (2d ed.1985).

### III. The Two–Step Approval Process in the Context of Settlement Classes.

When viewed in the context of a pre-negotiated settlement, the class action standards of Rule 23 unfortunately beget a variety of pragmatic dilemmas.[10] First, the Rule fails to make any specific accommodation for the class settlement format, and it places a series of inconsistent burdens upon courts attempting to fit such actions within its framework. *Compare* FED.R.CIV.P. 23(c)(1) (directing that the certification decision be made "as soon as practicable" within each proceeding) *and* FED.R.CIV.P. 23(c)(2) (upon finding certification appropriate, the court shall notify the class members of their prospective inclusion), *with* FED.R.CIV.P. 23(e) (stating that class actions shall not be compromised without notice "to *all members of the class*" ) (emphasis added).

 Second, while determinations of numerosity, predominance, and typicality often may be made without delving into the terms of an impending compromise, consider-

---

**10.** The fundamental question of whether it is proper under Federal Rule of Civil Procedure 23 to certify a class for settlement purposes only appears to have been answered affirmatively, but with reservation. *See, e.g., Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 33 (3d Cir. 1971) (finding no prohibition against settlement classes); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1176 (9th Cir.1977) (describing how courts should combine notice of the pendency of the class and of the terms of the proposed settlement); *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179–80 (5th Cir.1979); *In re Corrugated*

*Container Antitrust Litig.*, 643 F.2d 195, 223 (5th Cir.1981) (upholding settlement despite pre-certification negotiations with some defendants); *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *but see Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681 (7th Cir.1987) (ultimately approving a settlement so fashioned, but criticizing settlement classes generally); MANUAL FOR COMPLEX LITIGATION § 30.45 at 243 (2d ed.1985) (recognizing the potential benefits of settlement classes, but nevertheless cautioning that "court[s] should be wary of presenting the settlement to the class").

ations such as the adequacy of representation afforded class members and the superiority of resolving matters on a class-wide basis may best be evidenced by the ultimate fairness and acceptability[11] of the settlement that has been negotiated. *See In re Asbestos Litigation,* 90 F.3d 963, 975 (5th Cir.1996); *White v. Nat'l Football League,* 41 F.3d 402, 408 (8th Cir.1994); *cert. denied* —— U.S. ——, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 740 (4th Cir.1989), *cert. denied* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *In re Dennis Greenman Securities Litigation,* 829 F.2d 1539, 1543 (11th Cir.1987) (courts must consider the settlement and evidence adduced at its fairness hearing in order to make complete findings under Rule 23). At the same time, however, the fairness and adequacy of any pre-certification settlement cannot be determined absolutely, until such time as its terms have been served upon the class members and any objections by that group have been presented. *See A.H. Robins,* 880 F.2d at 748 (in approving any settlement, the court must give proper consideration to the class members' attitudes towards the agreement); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1976), *cert. denied* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976) (members must be given leave to be heard before any settlement's approval). Thus, while no settlement class properly may be certified without reference to the acceptability of the negotiated agreement, the fairness and adequacy of any settlement's terms cannot be fully determined until the class has received notice of the certification and impending settlement.[12]

Facing this procedural quandary, courts have resorted to a two-step approach in an effort to meet the unique demands of the pre-negotiated class settlement. At the first step in this two-stage model, a pre-certification hearing is held to determine if the proposed settlement falls within the range of possible approval, i.e., whether probable cause exists to certify the class and issue notification of the settlement's terms. *See Armstrong v. Board of School Directors of City of Milwaukee,* 616 F.2d 305, 314 (7th Cir.1980); *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 855 F.Supp. 825, 827–28 (E.D.N.C.1994); *In re Mid–Atlantic Toyota Antitrust Litigation,* 564 F.Supp. 1379, 1384–85 (D.Md.1983). Provided that such initial endorsement is granted, the court later conducts a final hearing regarding the settlement's fairness, affording those parties

---

**11.** Indeed, the greatest threat generated by pre-negotiated settlement classes is one of collusion to the detriment of individual members. *In re General Motors Pick–Up Truck Fuel Tank Prod. Liability Litigation,* 55 F.3d 768, 788 (3d Cir. 1995); *In re California Micro Devices Securities Litigation,* 168 F.R.D. 257, 261 (N.D.Cal.1996); *In re Baldwin–United Corp.,* 105 F.R.D. 475, 480 (S.D.N.Y.1984). As one court explained, the "danger of a premature, even a collusive, settlement [is] increased when ... the status of the action as a class action is not determined until a settlement has been negotiated, with all the momentum that a settlement generates." *Mars Steel v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 680 (7th Cir.1987). Thus, in an effort to insure the adequate representation of class members' interests, courts examine the fairness of all pre-negotiated settlements through a particularly scrutinizing lens. *See In re Asbestos Litigation,* 90 F.3d 963, 1008 (5th Cir.1996) (Smith, C.J., dissenting); *Ace Heating & Plumbing Co. v. Crane Co.,* 453 F.2d 30, 33 (3d Cir. 1971).

**12.** In order to resolve this conflict, the Advisory Committee on Civil Rules is in the process of modifying Rule 23, and it has proposed authoriz-ing the certification of settlement classes without consideration of Rule 23(b)(3)'s requirements. *See* FED.R.CIV.P. 23(b)(4) (Draft Aug. 15, 1996); *see also* Samuel Estreicher, Foreword, *Federal Class Actions After 30 Years,* 71 N.Y.U.L.REV. 1, 6 & n. 26 (1996) (noting that proposed (b)(4) category would allow trial courts to certify class actions for purposes of settlement, even though the requirements of subdivision (b)(3) might not be met for trial); Edward H. Cooper, *Rule 23: Challenges to the Rulemaking Process,* 71 N.Y.U.L.REV. 13 (1996) (discussing proposed changes to Rule 23). This idea has met with substantial opposition from a number of quarters, however. *See, e.g., In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 786–94 (3d Cir.1995) (holding that under present rule settlement class must meet all Rule 23 requirements and expressing concern about dangers of overrewarding attorneys and under compensating class members), *cert. denied,* —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995); *see also Georgine v. Amchem Prods.,* 83 F.3d 610, 624–25 (3d Cir.1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 379, 136 L.Ed.2d 297 (1996); John C. Coffee, Jr., *Class Wars: The Dilemma of the Mass Tort Class Action,* 95 COLUM.L.REV. 1343 (1995).

with an interest in the matter an opportunity to be heard. *Id.* This approach recognizes the fundamental interdependence of the certification and settlement processes as they are applied to previously compromised actions, while accommodating the somewhat ungainly terms of Rule 23. *See Thomas v. Christopher,* 169 F.R.D. 224, 230 (D.D.C. 1996); *Georgine v. Amchem Prods., Inc.,* 157 F.R.D. 246, 257–59 (E.D.Pa.1994); *see also* MANUAL FOR COMPLEX LITIGATION § 30.44 (2d ed.1985). To the extent that it recognizes the pragmatic need for pre-negotiated settlements [13] and accomplishes the sisyphean task of their incorporation under Rule 23, the two-step model offers the preferable mode of procedure in such actions. *See Armstrong,* 616 F.2d at 314; *Horton,* 855 F.Supp. at 827; *In re Mid–Atlantic Toyota,* 564 F.Supp. at 1384–85. Consequently, notwithstanding the objections of the Macon County Plaintiffs to the contrary, the two-step approach and its attendantly preliminary determinations of certification and settlement evaluation shall be employed in this proceeding.

## IV. Preliminary Settlement Approval and Certification in this Case.

Given the size of the involved consumer class, which may approach 200,000 members, and the relatively small amount of each individual's claim, the Court has no doubt that the requirements of numerosity and superiority stand met in this proceeding. *See Garcia v. Gloor,* 609 F.2d 156, 160 (5th Cir.1980); *Kelley v. Norfolk & W. Ry. Co.,* 584 F.2d 34, 35–36 (4th Cir.1978); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.,* 149 F.R.D. 65, 79 (D.N.J.1993); *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993). Common issues also appear to predominate in this controversy, both as a con-

sequence of the members' shared interest in the settlement, *see In re Asbestos Litigation,* 90 F.3d 963, 975 (5th Cir.1996) (citing HERBERT NEWBERG & ALBA CONTE, 2 NEWBERG ON CLASS ACTIONS § 11.28 at 11–58 (3d ed.1992) (in settlement class context, common issues arise from the settlement itself)), and as a result of the common theme of fraudulent business practices alleged by each class member. *Cameron v. E.M. Adams & Co.,* 547 F.2d 473, 477 (9th Cir.1976); *Werner v. Satterlee, Stephens, Burke & Burke,* 797 F.Supp. 1196, 1215–16 (S.D.N.Y.1992) (uniform allegations that the defendant engaged in fraudulent and deceptive business practices found to satisfy Rule 23(b)(3)'s predominance criteria).

Likewise, the requirements of typicality and adequate representation appear met as they pertain to the named plaintiffs in this action. *See Reed v. Bowen,* 849 F.2d 1307, 1313 (10th Cir.1988); *Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019, 1024 (5th Cir.1983); *Modell v. Eliot Sav. Bank,* 139 F.R.D. 17, 23 (D.Mass.1991); *see also Andrews v. American Telephone & Telegraph Co.,* 95 F.3d 1014, 1022 (11th Cir. 1996); *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996). As previously noted, The Debtor has proposed that five individuals serve as named plaintiffs in the Settlement Class. Two of these five previously served as named litigants in the *Nobles* class action, two were named plaintiffs in the *McCurdy* action, and one was the plaintiff in the *Huffman* action. Collectively, these plaintiffs hold claims that are typical of the consumer group, and they bear the same interest in this litigation as the members themselves. Furthermore, the capable attorneys representing this class bear no conflict of interest,[14] and through careful negotiation

---

**13.** One of the key underpinnings of the class action model, after all, is pragmatic need to structure an "economical means of disposing of similar lawsuits." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 402–03, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980). As such, "courts should favor the use of devices that tend to foster negotiated solutions to these actions. Prima facie, this would include settlement classes." *In re General Motors Pick–Up Truck Fuel Tank Prod. Liability Litigation,* 55 F.3d 768, 784 (3d Cir.1995).

**14.** At first blush, one might find an impermissible conflict to exist, given that class counsel negotiated the Debtors' consent to its forthcoming fee request as part of the broader Settlement Agreement. *See Malchman v. Davis,* 761 F.2d 893, 906–08 (2d Cir.1985) (Newman, J., concurring), *cert. denied,* 475 U.S. 1143, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986) ("It is unlikely that a defendant will gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something will normally be at the expense of the plaintiff

with the Debtors they appear to have produced a settlement that falls within the range of possible approval.[15] As such, the Court finds cause to certify conditionally the proposed class action, for settlement purposes only, and to approve preliminarily the settlement that has been reached.[16]

## V. Provisions for Notice.

 In any class action maintained under subdivision (b)(3), the court must direct that notice be given to each member as follows: (1) that the court will exclude the member from the class if the member so requests by a specified date; (2) that the judgment, whether favorable or not, will include all members who do not request exclusion; and (3) that any member who does not request exclusion may, if the member desires, enter an appearance through counsel. *See* FED.R.CIV.P. 23(c)(2). Similarly, each class member must be given notice of any compromise before court approval of the settlement's terms is received. *See* FED. R.CIV.P. 23(e); *see also General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *La Mar v. H & B Novelty & Loan Co.* 489 F.2d 461, 467–68 (9th Cir.1973). In each of these contexts, notice must be provided to class members in the best method that is practicable under the circumstances. *See* FED. R.CIV.P. 23(c)(2). Furthermore, as the Advisory Committee Notes to the Rule point out,

the requirement of Rule 23(c)(2) that "the best notice practicable" be given is mandatory, not just discretionary. *See* FED.R.CIV.P. 23(c) (Adv.Comm.Note). Publication notice will not suffice, therefore, when the names and addresses of the parties are known. *Mullane v. Central Hanover Bank & Trust,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

 Recognizing this limitation, the Debtors have structured a notice system which provides for direct written notice of the options posed by Rule 23(c)(2), as well as information regarding the Settlement Agreement's terms, to each prospective class member. For those notices returned because of improper addresses, the Settlement Agreement also contemplates the employment of a reputable and professional locating service in order to obtain a correct address for the members, thereby insuring adequate notice. Subject to approval of the notice's terms, the Court finds these procedures to meet the "best notice practicable requirement" of Rule 23(c)(2), and they consequently shall be approved. *General Telephone Co.,* 457 U.S. at 147, 102 S.Ct. at 2365; *La Mar,* 489 F.2d at 467–68.

### CONCLUSION

This matter having come before the Court on the Motion for Orders (i) Making Federal Rule of Bankruptcy Procedure 7023 Applicable, (ii) Certifying Settlement Class and Sub–

---

class"). The inclusion of such a "clear sailing" provision within the settlement agreement's terms, however, merely justifies the Court's application of heightened scrutiny when evaluating the class counsel's ultimate fee request; it should not be read as an independent ground for withholding approval of the entire settlement. *See Democratic Central Committee of the District of Columbia v. Wash. Metro. Area Transit Comm'n,* 3 F.3d 1568, 1573 (D.C.Cir.1993); *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 523 (1st Cir.1991).

**15.** This is not to say, however, that further evidence will not be necessary in the course of an impending fairness hearing in order for the Court to reach a final determination on the settlement's approval. To the contrary, the proponents of this agreement must adduce further information demonstrating that the nine considerations of *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975), are met in the case at bar. In particu-

lar, the Court will require additional evidence regarding the Debtors' ability to withstand a greater judgment, the means by which the parties arrived at their settlement figure, and the degree of active negotiation that precipitated its development.

**16.** The Court acknowledges that, absent some reconciliation between the Debtors and the Macon County Plaintiffs, the Settlement Agreement will fail by the terms of its own contingency provisions. Based upon the tenor of their representations to the Court, however, the parties appear equally and earnestly motivated to reach some settlement regarding the claims of the excluded Macon County group, and it seems very likely that all issues relating to the Macon County Plaintiffs will be consensually resolved. In view of this fact, the Court will not withhold certification of the broader settlement class merely because those contingencies from the Settlement Agreement remain unmet at the present time.

Classes, (iii) Granting Preliminary Approval of Class Settlement, (iv) Establishing Deadline for Opting Out of Class Settlement, (v) Setting Bar Date for Filing Proofs of Claim, and (vi) Approving the Form and Procedure for Providing Notice by Skinner Group, Inc., Skinner Corporation, and their respective subsidiaries; and

The Court having found all relief sought therein to be properly justified, it hereby is **ORDERED** that the above styled Motion is **GRANTED,** under the following terms:

(1) Pursuant to Federal Rule of Bankruptcy Procedure 9014, the Court hereby makes Federal Rule of Bankruptcy Procedure 7023 applicable to this proceeding;

(2) Having found the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3) met in this case, the Court hereby conditionally certifies, for settlement purposes only, the settlement class and subclasses proposed by the Debtors in their omnibus Motion;

(3) Having found the Settlement Agreement attending the Debtors' Motion to fall within the range of possible approval, the Court conditionally approves the same, subject to a final hearing on the settlement's fairness and adequacy, to be held before the undersigned in the Second Floor Courtroom, United States Courthouse, 18 Greenville Street, Newnan, Georgia, at 10:00 A.M., on the 7TH day of MAY, 1997;

(4) Pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3), the Court hereby fixes the 15TH day of APRIL, 1997, as the deadline for filing proofs of claim in this case;

(5) Likewise, pursuant to Federal Rule of Civil Procedure 23(c)(2)(A), the Court hereby sets the 15TH day of APRIL, 1997, as the last date for opting out of the settlement classes and/or subclasses involved in this proceeding;

(6) Finally, the Court approves the provisions for notice offered under the Settlement Agreement that has been preliminarily ratified. The Debtors shall, within ten (10) days of the date of this Order, submit for the Court's approval a proposed notice informing each prospective member of their rights under Federal Rule of Civil Procedure 23(c)(2), relating the terms of the proposed settlement, and notifying each member of the deadlines and hearing dates that have been set under the terms of this Order.

**IT IS SO ORDERED.**